J-S65043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| FRED LAWTON, | |
| Appellant | No. 1086 EDA 2014 |

Appeal from the Judgment of Sentence January 9, 2014
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0001488-2013

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 16, 2014**

Appellant, Fred Lawton, appeals from the judgment of sentence imposed on January 9, 2014, following his jury conviction of burglary.[1] Appellant's counsel has filed a brief and a petition to withdraw under **_Anders v. California_**, 386 U.S. 738 (1967), and **_Commonwealth v. Santiago_**, 978 A.2d 349 (Pa. 2009), alleging that the appeal is wholly frivolous.  We affirm the judgment of sentence and grant counsel's request to withdraw.

We take the underlying facts and procedural history in this matter from the trial court's June 19, 2014 opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3502(a)(4).

A Criminal Complaint was filed on January 31, 2013[,] charging [Appellant] with 18 Pa.C.S.A. [§] 3502(a)(4) [b]urglary. The events that led to this charge began on January 30, 2013[,] a little before 10:00 p.m. that evening. Officer Mathew Hungerford was in the area of the Ogontz Shopping Center in Cheltenham Township, Montgomery County looking for a subject related to a separate incident at a Walgreens. While driving through the complex near the Walgreens, Officer Hungerford heard an alarm.

Officer Hungerford determined the alarm was coming from the Midas Store, located at 8141 Ogontz Avenue, which was across the street from where he was situated at the time. He saw [Appellant] and a female, Simone Bivens walking approximately 50 feet away from the Midas Store and headed toward the Shop-Rite parking lot. He then observed [Appellant] turn and look at his patrol vehicle[,] which was headed in their direction. [Appellant] was holding a black box by the handle in his right hand, but tucked it up under his right arm and began to walk faster after making eye contact with Officer Hungerford.

Officer Hungerford pulled up to the Midas Store, which was closed at the time, before he decided to investigate [Appellant] and Bivens any further. He saw that the front door of the Midas Store had been completely smashed. More specifically, the glass was completely spidered but remained connected to the door because there was a plastic coating that prevented the glass from falling to the ground. Thereafter, Officer Hungerford pulled his vehicle to the rear of the Midas Store[,] which put him in the Shop-Rite parking lot. He then pulled up near [Appellant] and Bivens and ordered them to stop so he could investigate the potential burglary.

[Appellant] initially did not comply with Officer Hungerford's order to show him his hands. After ordering him once more, [Appellant] produced a large metal wrench by raising it over his head with his right hand. Officer Hungerford asked him twice to drop the wrench, and he complied on the third request by throwing it to the ground. The officer then placed [Appellant] against the patrol vehicle and handcuffed him.

The Midas Store manager, Brian Beers[,] arrived and escorted the police officers into the store to assess the damages. Beers noticed that the cash drawer was on the ground and

- 2 -

emptied. Additionally, he noticed that the store's black petty-cash box was missing. Sergeant Joseph O'Neill observed the cash box on the ground of the parking lot between the Midas Store and the area where Officer Hungerford stopped [Appellant]. [Appellant] was ultimately arrested and transported to the police station. His clothing was taken into evidence to preserve the pieces of glass that were located on his jacket and boots. Moreover, it was determined that [Appellant's] burglary resulted in the theft of $197.47 from the Midas Store.

A two-day jury trial began on October 15, 2013[,] and [Appellant] was found guilty of [b]urglary. Thereafter, [the trial] court imposed a sentence of [not less than] three [nor more than] eight years[' incarceration] on January 9, 2014. A [p]ost-[s]entence [m]otion was filed, asking [the trial] court for a new trial or reconsideration of [Appellant's] sentence. [The trial court] denied said [m]otion by an [o]rder dated March [27], 2014. The instant [n]otice of [a]ppeal was filed on April 8, 2014, which prompted [the trial] court to direct [Appellant] to produce a statement of issues in conformance with Pennsylvania Rule of Appellate Procedure 1925(b) [on April 16, 2014]. [Appellant] complied with that directive [on April 18, 2014].

(Trial Court Opinion, 6/19/14, at 1-3) (footnotes, record citations, and quotation marks omitted).[2]

_____

[2] On July 14, 2014, this Court ordered Appellant to show cause as to why we should not dismiss this appeal as untimely. (*See* Order, 7/14/14, at unnumbered page 1). We opined that Appellant's post-sentence motions, filed on January 22, 2014, were untimely. (*See id.*). On July 25, 2014, we received a letter from the trial court explaining that the post-sentence motions were due on January 19, 2014, which was a Sunday, and that Monday, January 20, was a legal holiday. (*See* Letter, 7/25/14, at unnumbered page 1). The trial court further stated that the court closed early on Tuesday, January 21, 2014 due to inclement weather. (*See id.*). Therefore, the trial court informed trial counsel that it would allow her to file the post-sentence motions at the first available opportunity on Wednesday, January 22, 2014. (*See id.*). Thus, we find that Appellant did timely file his post-sentence motions.

On appeal, Appellant raises the following questions for our review:

Is there legally sufficient evidence to support Appellant's conviction for the offence of burglary?

Did the trial court abuse its discretion when it denied Appellant's motion for a new trial on the basis that the guilty verdict was against the weight of the evidence?

Did the trial court abuse its discretion when it imposed a sentence of three (3) to eight (8) years in prison with respect to Appellant's burglary conviction?

(*Anders* Brief, at 6).

Appellant's counsel has petitioned for permission to withdraw and has submitted an *Anders* brief, which is procedurally proper for counsel seeking to withdraw on direct appeal. *See Anders*, *supra* at 744. Court-appointed counsel who seeks to withdraw from representing an appellant on direct appeal on the basis that the appeal is frivolous must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, *supra* at 361. When we receive an *Anders* brief, we first rule on the petition to withdraw and then review the merits of the underlying issues. *See Commonwealth v. Garang*, 9 A.3d 237, 240-41 (Pa. Super. 2010). In addition, "[p]art and parcel of *Anders* is our Court's duty to review the

- 4 -

record to insure no issues of arguable merit have been missed or misstated." ***Commonwealth v. Vilsaint***, 893 A.2d 753, 755 (Pa. Super. 2006).

In the instant matter, counsel has substantially complied with all the requirements of ***Anders*** and ***Santiago***. Specifically, he has petitioned this Court to withdraw because "[t]here were no non-frivolous issues to be addressed[.]" (Petition for Withdraw as Counsel, 9/03/14, at unnumbered page 3). In addition, after his review of the record, counsel filed a brief with this Court that provides a summary of the procedural history and facts with citations to the record, refers to any facts or legal theories that arguably support the appeal, and explains why he believes the appeal is frivolous. (***See Anders*** Brief, at 7-40). Lastly, he has attached, as an exhibit to his petition to withdraw, a copy of the letter sent to Appellant giving notice of his rights, and including a copy of the ***Anders*** brief and the petition. ***See Commonwealth v. Millisock***, 873 A.2d 748, 749 (Pa. Super. 2005). Appellant filed a response on November 3, 2014, wherein he argued that counsel misstated the record and highlighted certain alleged inconsistencies in the trial testimony. (***See*** Amended Brief to Support Argument, 11/03/14, at unnumbered pages 1-2). However, Appellant does not raise any additional issues in his filing. (***See id.***). Because counsel has substantially complied with the dictates of ***Anders***, ***Santiago***, and ***Millisock***, we will examine the issue set forth in the ***Anders*** brief that counsel believes has arguable merit. ***See Garang***, ***supra*** at 240-41.

In its first claim, the **Anders** brief alleges that the evidence was insufficient to sustain his conviction for burglary because, "there is no direct evidence linking him to the break in at the Midas Shop. . ." (**Anders** Brief, at 19). Our standard of review for sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, **when viewed in a light most favorable to the Commonwealth as verdict winner**, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. Tarrach**, 42 A.3d 342, 345 (Pa. Super. 2012) (citations omitted) (emphasis added).

> A person commits the offense of burglary if, with the intent to commit a crime therein, the person: . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

18 Pa.C.S.A. § 3502(a)(4). The learned trial court succinctly summarized the evidence against Appellant as follows:

Viewing the evidence in the light most favorable to the Commonwealth, the jury was able to determine [Appellant's] guilt was established beyond a reasonable doubt. The testimony of Officer Hungerford and Sergeant O'Neill established that on January 30, 2013 a little before 10:00 p.m., the Midas Store alarm was going off and the glass of the front door was smashed, indicating a break-in had just occurred. A later investigation by the police, with the help of store manager, Brian Beers, revealed that the cash drawer was pulled out and emptied, and a black petty-cash box was missing.

The record reflects that within moments after he noticed the alarm going off, Officer Hungerford saw a male and a female walking approximately 50 feet in front of the Midas Store, headed toward Shop-Rite. He saw that the male, identified as [Appellant], was carrying a black box that was later discovered to be the petty-cash box missing from the Midas Store. To further corroborate Officer Hungerford's observations, a loss prevention officer from Shop-Rite, George Hamilton[,] also witnessed a male he identified as [Appellant] walking in the parking lot with a female. Additionally, Hamilton saw [Appellant] drop a black box after he realized that Officer Hungerford's vehicle was following him.

The testimony of the witnesses also established that immediately after being stopped in the parking lot by Officer Hungerford, [Appellant] was in possession of a burglary tool or a large metal wrench; there were glass particles found on [Appellant's] jacket and boots; a wad of cash was removed from his pocket; and the theft committed by [Appellant] was of $197.47. Finally, Brian Beers testified that the Midas Store was in fact closed for business on January 30, 2013 a little before 10:00 p.m. and [Appellant] did not have permission to be in the store at that time.

The record therefore reflects that in the light most favorable to the Commonwealth, the jury fairly concluded that the Defendant burglarized the Midas Store[.]

(Trial Ct. Op., 6/19/14, at 7-8). This evidence was more than sufficient to sustain Appellant's conviction for burglary. ***See Commonwealth v. Carothers***, 675 A.2d 734, 735-37 (Pa. Super. 1996) (evidence sufficient to

sustain conviction for burglary where police saw defendant at rear of building, defendant fled upon seeing police, and police discovered discarded burglary tool and cash along his flight route). Appellant's first claim lacks merit.

In its second issue, the **_Anders_** brief challenges the weight of evidence, alleging "that the testimony of the Commonwealth's witnesses was so contradictory as to render it not worthy of belief." (**_See Anders_** Brief, at 26).

Our scope and standard of review of a weight of the evidence claim is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

In its Rule 1925(a) opinion, the trial court explained why it rejected Appellant's weight of the evidence claim. (*See* Trial Ct. Op., at 8-10). Further, the record reflects that the jury chose to credit the testimony of the six Commonwealth witnesses who observed Appellant on the night of the robbery, and chose to reject the defense's theory of the case. This Court cannot substitute our judgment for that of the trier of fact. *See Commonwealth v. Holley*, 945 A.2d 241, 246 (Pa. Super. 2008), *appeal denied*, 959 A.2d 928 (Pa. 2008). Further, the jury, sitting as finder of fact, was free to believe the Commonwealth's witnesses and to disbelieve the defense witnesses. *See Commonwealth v. Griscavage*, 517 A.2d 1256, 1259 (Pa. 1986). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Commonwealth v. Lee*, 956 A.2d 1024, 1029 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009) (citation omitted).

Thus, after a thorough review of both the trial court's opinion and the record in this matter and we conclude that the trial court did not commit a palpable abuse of discretion in rejecting Appellant's claim. Therefore, Appellant's weight of the evidence claim fails.

In its final issue, the **Anders** brief challenges the discretionary aspects of Appellant's sentence.[3] The right to appeal the discretionary aspects of a sentence is not absolute. **See Commonwealth v. McAfee**, 849 A.2d 270, 274 (Pa. Super. 2004), *appeal denied*, 860 A.2d 122 (Pa. 2004). When an appellant challenges the discretionary aspects of the sentence imposed, he must present "a substantial question as to the appropriateness of the sentence[.]" **Commonwealth v. Anderson**, 830 A.2d 1013, 1017 (Pa. Super. 2003) (citations omitted). An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate "a colorable argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." **Commonwealth v. Kimbrough**, 872 A.2d 1244, 1263 (Pa. Super. 2005) (*en banc*), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (citation omitted). If an appellant's Rule 2119(f) statement meets these

_____

[3] We note that Appellant preserved his discretionary aspects of sentence claim by filing timely post-sentence motions for reconsideration of sentence. (**See** Post-Sentence Motions, 1/22/14, at unnumbered page 7); **see also McAfee**, *infra* at 275.

prerequisites, we determine whether a substantial question exists. **See Commonwealth v. Goggins**, 748 A.2d 721, 727 (Pa. Super. 2000), *appeal denied*, 759 A.2d 920 (Pa. 2000). "Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits." **Id.** (emphases in original).

Here, Appellant has included a Rule 2119(f) statement in his brief. (**See Anders** Brief, at 18). Appellant claims that the trial court improperly used his criminal history to bolster his sentence, even though it was already accounted for in his prior record score. (**See id.**). However, in his Rule 2119(f) statement, Appellant concedes that his sentence was in the standard range of the Sentencing Guidelines. (**See id.**). Appellant also acknowledges that the trial court had the benefit of a pre-sentence investigation report (PSI), and that "where the sentencing court has the benefit of a PSI report, the law presumes that the court was aware of the relevant information regarding [Appellant's] character and weighed those considerations, along with the mitigating statutory factors." (**Id.** at 37); **see also Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010).

A claim that a sentencing court improperly relied on his criminal history raises a substantial question. **See Commonwealth v. Shugars**, 895 A.2d 1270, 1274 (Pa. Super. 2006) (claim that sentencing court based

sentence on defendant's prior convictions raises substantial question). Our review of the record in this matter demonstrates that this claim is meritless.

In fashioning the sentence, the sentencing court specifically stated that it considered the presentence report, the guidelines, and the nature and circumstances of the offense. (*See* N.T. Sentencing Hearing, 1/09/14, at 16-20). The court expressed its concern about Appellant's over thirty-year criminal history, which included twenty-five juvenile arrests, resulting in ten adjudications, and fifty-five adult arrests, resulting in twenty-three convictions, for substantially similar theft-type offenses. (*See id.* at 17). The trial court, in discussing Appellant's criminal history properly noted that the then approximately forty-one-year-old Appellant had lived a life of crime since the age of twelve. (*See id.* at 16). The court noted the many risks factors in Appellant's development, Appellant's history of committing offenses, including the current offense while under supervision, and the danger he presented to the community. (*See id.* at 16-18). Therefore, Appellant's claim is meritless.

Appellant's issues do not merit relief. Further, this Court has conducted an independent review of the record as required by *Anders* and *Santiago* and finds that no non-frivolous issues exist.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2014