949 A.2d 873

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Junious G. DIGGS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 2007.

Decided June 17, 2008.

David Scott Rudenstein, Esq., for Junious G. Diggs.

Amy Zapp, Esq., Hugh J. Burns, Jr., Esq., Anthony Pomeranz, Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Justice SAYLOR.

This is a direct appeal from a sentence of death imposed by the Philadelphia County Court of Common Pleas, following Appellant Junious G. Diggs' conviction of the first-degree murder of Johnetta Bryant and related charges.

### Background

On March 16, 2002, thirteen-year-old Kaneesha Cooper ("Kaneesha") was sitting on her front porch on Beaumont Street in Philadelphia while her mother Johnetta Bryant (the victim) and Kaneesha's two brothers were inside. Kaneesha was playing with her friend Marquis, and her brothers were upstairs watching television; the victim was in the first-floor

dining room. At approximately 7:00 p.m., Appellant, a neighbor known to Kaneesha as "Binky," arrived and asked if Kaneesha's mother was home. Kaneesha—who was aware that Appellant had recently argued with her mother—indicated that she would get her mother from inside and bring her out, but that Appellant should not go inside because her mother might be getting dressed. Appellant did not wait, however, and entered the home directly behind Kaneesha, pushing the latter out of the way to approach the victim. When Appellant saw the victim, the two started arguing. Kaneesha picked up the phone to call the police because her mother had told her that Appellant was not allowed in the house. While trying to place the call, Kaneesha heard her mother say, "Get out of my house," to which Appellant replied, "Okay, you going to call the cops, try to get me locked up[?]" He then produced a gun and shot the victim a total of ten times, killing her. Kaneesha ran to her friend's home nearby and summoned the police.

When the police arrived, Kaneesha's twin brother Klinton told them that he heard gunshots while upstairs with his younger brother. Kaneesha, who was now back at her home, told police that "Binky" shot her mother. Kaneesha and her siblings were transported to the police station, where she gave a statement and identified Appellant from a photo array. Meanwhile, Appellant fled the Commonwealth and was ultimately apprehended two months later upon his return to Philadelphia.

An autopsy revealed that the victim was shot twice in the groin, once in the upper arm consistent with a defensive wound, once in the face, and six times in the back of the head. The medical examiner testified that some of the wounds were consistent with an individual standing over the victim and shooting downward. In this regard, a Crime Scene Unit officer who inspected the scene also observed that at least four shots were fired at close range in a deliberate downward motion, penetrating an area of the carpet that was saturated with blood. Three of these rounds landed in the basement,

and one became embedded in the dining room floor. No empty shell casings were recovered from the basement.

On March 5, 2004, a jury found Appellant guilty of first-degree murder, burglary, criminal trespass, and possessing an instrument of crime. At the conclusion of the penalty phase, the jurors found one aggravating circumstance—that the killing was committed in perpetration of the felony of burglary, *see* 42 Pa.C.S. § 9711(d)(6)—as well as the "catchall" mitigator, *see id.,* § 9711(e)(8). Having unanimously concluded that the former outweighed the latter, the jury set the penalty at death. *See* N.T. March 9, 2004, at 44; 42 Pa.C.S. § 9711(c)(1)(iv). The court formally imposed the death penalty and additionally sentenced Appellant to an aggregate term of seven-and-a-half to fifteen years' imprisonment for burglary and possessing an instrument of crime. The court did not impose a separate sentence for criminal trespass, as it considered the offense to merge with burglary for sentencing purposes.

After an automatic appeal was lodged with this Court, trial counsel withdrew and appellate counsel was appointed. This Court then remanded the record for preparation of an opinion. The trial court filed its opinion and supplemental opinion on September 7, 2006, and October 10, 2006, respectively.[1]

### Sufficiency and Weight of the Evidence

Appellant first challenges the sufficiency of the evidence to support the first-degree murder conviction. To obtain a conviction for first-degree murder, the Commonwealth must demonstrate that: a human being was unlawfully killed; the defendant was the killer; and the defendant acted with malice and a specific intent to kill. *See* 18 Pa.C.S. §§ 2501, 2502(a); *Commonwealth v. Moore,* 594 Pa. 619, 628, 937 A.2d 1062, 1067 (2007) (citing *Commonwealth v. Collins,* 550 Pa. 46, 50, 703 A.2d 418, 420 (1997)). In determining whether there was sufficient evidentiary support for a jury's

---

1. The need for a supplemental opinion arose because Appellant was granted permission to file a supplemental Rule 1925 statement raising issues pertaining to the jury charge once the transcript of that charge became available.

finding to this effect, the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. *See Commonwealth v. Crews*, 436 Pa. 346, 348, 260 A.2d 771, 771–72 (1970). The court bears in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence. *See Commonwealth v. Cousar*, 593 Pa. 204, 217, 928 A.2d 1025, 1032–33 (2007); *Commonwealth v. Harper*, 485 Pa. 572, 576–77, 403 A.2d 536, 538–39 (1979).

Appellant admits that, because he shot the victim multiple times at close range, the jury was permitted to infer that he acted with malice, and therefore, that he committed murder. He thus focuses his argument on the question of whether he acted with a specific intent to kill Ms. Bryant. *See, e.g., Commonwealth v. Taylor*, 583 Pa. 170, 186, 876 A.2d 916, 926 (2005) (observing that, apart from felony murder, any murder committed without specific intent constitutes third-degree murder).[2] In this respect, although he concedes that forming a specific intent to kill "can take but a moment," Appellant maintains that the evidence was insufficient to support that conclusion, as it seemed rather to indicate that he entered the house calmly and then acted upon a sudden provocation when confronted with "hollering" by the victim.

█ Although Appellant also references other factors that might be consistent with a finding that he did not harbor a specific intent to kill, the overarching difficulty with his argument is that he interprets the evidence in a manner most favorable to himself. Viewing the proofs favorably to the prosecution, it is relevant that Appellant had recently argued

---

2. Appellant's argument in this regard is consistent with his presentation to the jury in which he conceded malice and sought a third-degree murder verdict.

with the victim, arrived at the her house with a gun, ignored her daughter's directive to stay outside (and indeed pushed the daughter aside to enter the residence), responded in an angry manner to the victim's command to leave the premises, and then shot the victim a total of ten times, including twice in the groin, once in the face, and six times in the back of the head. Of particular importance is the testimony provided by the ballistics expert and the medical examiner indicating that Appellant stood over the victim, firing downward at the back of her head while she lay face-down on the floor. As a specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the body, *see Commonwealth v. DeJesus,* 580 Pa. 303, 308, 860 A.2d 102, 106 (2004), we conclude that the jury was justified in finding Appellant guilty of first-degree murder.

■ Appellant also questions whether the evidence was sufficient to support his burglary conviction. An individual commits burglary "if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S. § 3502(a). The only question Appellant raises is whether the evidence showed that he was not privileged to enter. He maintains that he was known to, and liked by, the family; highlights testimony to the effect that Kaneesha had ushered him into the home, *see* N.T. March 3, 2004, at 79 (reflecting Marquis' testimony that Appellant asked Kaneesha "if her mother was in, she said yes, and she escorted him in"); and discounts Kaneesha's contrary testimony as coming from an "interested witness." He also argues that the record does not reflect that Kaneesha ever told Appellant he was not permitted to enter.

Appellant states, correctly, that he had known the family for a number of years—indeed, there was testimony that he was a neighbor whom Kaneesha had seen approximately every other day of her life. Notably, however, there was also evidence indicating that, in all those years, Appellant had only been inside the victim's home on one occasion, *see* N.T. March 3,

2004 at 34 (testimony of Kaneesha Cooper); that the victim had told her family members that Appellant was not permitted inside, *see id.* at 30; that Appellant had to "shove" Kaneesha out of the way in order to enter, *see id.;* and that the victim immediately ordered Appellant to leave the house as soon as she saw him, *see id.* at 43–44 (testimony of Kaneesha Cooper, recounting that her mother "jumped up when she saw me come in and [Appellant] was right behind me. First thing my mother said was get out."). Furthermore, regardless of how the situation may have appeared to Marquis, the jurors apparently believed Kaneesha's specific recollection that she had told Appellant not to enter the premises at the time of the incident. *See generally Cousar,* 593 Pa. at 219, 928 A.2d at 1033 (an appellate court is not authorized to substitute its estimation of a witness's credibility for that of the jury); *Commonwealth v. Story,* 476 Pa. 391, 415, 383 A.2d 155, 167 (1978) ("A jury has the duty to weigh the evidence and resolve conflicts therein."). As for Appellant's assertion that Kaneesha never told him he was not permitted to enter, the record is to the contrary, as Kaneesha testified as follows:

> So I walked up the [outside] steps to go get my mother, and before I hit the door, he was right behind me. And I said, "Oh no, you can wait, I'll go get her for you because I don't know if she's dressed."

N.T. March 3, 2004, at 29. This reflects that Appellant lacked permission to enter the residence. Although Appellant suggests that Kaneesha's instructions conveyed that he was privileged to enter if, in fact, Ms. Bryant was already dressed, *see* Brief for Appellant at 15–16, he cannot prevail on this assertion because, taking the evidence in the light most favorable to the Commonwealth, Kaneesha's directive was to wait outside, and her expressed concern about her mother's possible state of undress was merely the explanation for the directive.

When all of the above evidence is viewed favorably to the Commonwealth, it adequately supports the jury's finding that Appellant was not licensed or privileged to enter the premises, and that he entered "with intent to commit a crime therein." 18 Pa.C.S. § 3502(a).

■  Appellant also briefly argues that the verdicts were against the weight of the evidence. As to the burglary conviction, Appellant largely repeats his arguments concerning evidentiary sufficiency, noting in particular that only one witness (Kaneesha) provided the testimony suggesting a lack of privilege to enter, and that that witness's recitation of the events was in tension with the testimony of her friend, Marquis. He adds, as well, that there was no protection from abuse order in place, and that nothing in the record indicates that he had been told on any prior occasion that he could not simply enter the victim's house at will. Appellant again, in this context, emphasizes that he was known to, and liked by, the victim's family. As for the murder charge, Appellant highlights that there was no proof of any "bad blood" between himself and the victim; rather, he suggests that the proofs at trial demonstrated that as soon as he entered the home, he was "verbally attacked by the victim," which caused him to fly "into a rage, firing multiple times." Brief for Appellant at 21. This, Appellant indicates, is consistent with third-degree murder, not with premeditated murder.

■  A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings. *Cousar*, 593 Pa. at 222–23, 928 A.2d at 1035–36 (citing *Commonwealth v. Keaton*, 556 Pa. 442, 464, 729 A.2d 529, 540–41 (1999)).

In response to Appellant's weight-of-the-evidence claim, the common pleas court recounted the substantial trial proofs indicating that Appellant entered the premises uninvited and without permission, and fired six rounds into the back of the victim's head after being instructed to leave. As for Appellant's contention that he "flew into a rage," thus negating any inference of premeditation, Appellant fails to point to any evidence in the record supporting such a contention. Although Appellant did apparently adopt a confrontational attitude toward the victim immediately before killing her, the jury did not extrapolate this evidence to find that he suffered a sudden bout of passion that prevented him from forming a specific intent to kill. Particularly in view of the forensic evidence, recited above, tending to show that Appellant specifically intended to kill his unarmed victim, the jury's findings in this regard do not shock one's sense of justice. Accordingly, the trial court acted within its discretion in rejecting this claim.

### Alleged Prosecutorial Misconduct in the Guilt Phase

Appellant next avers that he is entitled to a new trial because the Commonwealth, in its closing argument to the jury, stated that the victim's daughter, Kaneesha Cooper, told anyone who would listen to her for the past two years (the time between the incident and the trial) that Appellant killed her mother. The prosecutor argued as follows:

[PROSECUTOR]: You heard the testimony of K[a]neesha Cooper as she sat here as grown up as a 15 year old can be under the circumstances. Faced her mother's killer and told you, the members of the audience and anybody who would listen, he shot my mother, Binky, killed my mother. She came in here, she faced you all, she faced him, and she said it. And it wasn't the first time K[a]neesha Cooper has said it. As a matter of fact, for the last two years, she has been telling anyone who would listen to her that Binky—

[DEFENSE COUNSEL]: Objection, Your Honor.

[PROSECUTOR]:—Killed her mother.

THE COURT: Overruled.

N.T. March 4, 2004 at 108–09.

Appellant submits that there is nothing in the record to establish that Kaneesha Cooper "has been telling anyone who would listen" about the shooting. He maintains the prosecutor embellished the Commonwealth's case with facts extrinsic to the record, which had the effect of bolstering her central witness's credibility, and that the trial court erred in overruling counsel's contemporaneous objection. The Commonwealth responds that the argument represented permissible oratorical flair and/or a permissible inference from the evidence that was presented, and that the statement was not prejudicial in any event because Appellant admits he was the killer.

It is undisputed that Kaneesha Cooper identified Appellant as the shooter, and that she never wavered from this identification or from her recitation of the facts that led up to the shooting.[3] Thus, even to the extent the prosecutor's suggestion that Kaneesha also told other, unnamed, individuals that "Binky shot my mother" exceeded the scope of the facts known to the jury, it does not appear to have been especially prejudicial; this is particularly true as Appellant has never denied shooting Ms. Bryant, and has instead argued that he lacked a specific intent to kill. *See, e.g.,* N.T. March 4, 2004, at 91 (reflecting counsel's guilt-phase summation in which he stated that "[Appellant] shot her, and shot her dead," but urged the jury not to find premeditation); *id.* at 97 (indicating counsel's continuing guilt-phase summation to the effect that "[t]hird degree murder would be the right decision in this particular case."); Appellant's Rule 1925(b) Statement at 1 ("[Appellant], acting in a rage, killed the victim."). Thus, because the prosecutor's embellishment was both relatively

---

3. For example, she told several police officers as well as other individuals at the crime scene that Appellant had shot her mother; she then repeated this accusation in her statement to the police, in her identification of Appellant from a police photo array, and in court. Her account was corroborated by her friend, Marquis Parker, who saw Appellant enter the victim's house, heard the argument between Appellant and Ms. Bryant, heard the ensuing gunfire, and then immediately witnessed Kaneesha run out of the house crying and screaming, "Binky shot my mother." *See* N.T. March 3, 2004 at 75–87.

minor and irrelevant to the contested issue of specific intent to kill, any error by the trial court in overruling counsel's objection was harmless beyond a reasonable doubt.

### Guilt Phase Jury Instructions

In his last two guilt-phase claims, Appellant alleges that the trial court erred during the jury charge when it defined malice, and when it remarked that it might have to re-instruct the jury on the elements of first-degree murder. Neither claim is preserved for review, as counsel did not raise any contemporaneous objection to the jury charge, and the errors that he asserted during his post-instruction colloquy with the trial court did not pertain to either of these alleged errors. *See* N.T. March 5, 2004 at 39–46. Thus, these issues are waived and may only be reviewed within the framework of an ineffectiveness allegation during post-conviction proceedings. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. May*, 584 Pa. 640, 654, 887 A.2d 750, 758 (2005); *see also Commonwealth v. Freeman*, 573 Pa. 532, 560, 827 A.2d 385, 402 (2003) (abrogating the relaxed waiver doctrine for capital direct appeals). Appellant also proffers that, in the event counsel's objections are deemed not pertinent to the alleged jury instruction errors, his attorney provided ineffective assistance for failing to raise any pertinent objection. As this Court stated in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), such ineffectiveness claims must await collateral proceedings under the Post Conviction Relief Act. *See id.* at 67, 813 A.2d at 738 ("We now hold that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review.").

### Alleged Need for Separate Mitigation Counsel

Next, Appellant contends that he is entitled to a new penalty hearing because he was not provided with a separate attorney for the penalty phase of his trial. In support of this claim, Appellant asserts that counsel told the court that he had

expected a separate lawyer to handle the penalty phase, and that he had written to the president judge requesting either authorization to bill the government for a second attorney or an additional fee for handling the mitigation aspect of the case himself. *See* Brief for Appellant at 25 (quoting N.T. March 8, 2004 at 18). Nevertheless, Appellant does not maintain that counsel either requested that the trial court appoint another lawyer or objected to the lack of one, nor does our review of the record indicate that any such request or objection was made.[4] Rather, counsel recited that two other individuals in his office (including another attorney) had been helping him plan for the mitigation case; affirmed that he was "prepared to go forward" with the penalty phase, N.T. March 8, 2004 at 18–19; and ultimately presented several mitigation witnesses, including a forensic psychologist who testified at length concerning Appellant's troubled upbringing, developmental delays, functional illiteracy, and apparent psychotic tendencies, *see id.* at 76–107 (testimony of Dr. Steven Samuel); *see also* Brief for Appellant at 29 (declining to find fault with trial counsel's "marshalling of witnesses," but arguing nonetheless that the "court administration" was at fault for allowing Appellant to proceed with an attorney whom he did not trust). Thus, pursuant to *Grant,* any error along the lines of that which Appellant now advances must be raised within the framework of an ineffectiveness claim during post-conviction review proceedings.[5]

4. Appellant does claim that it was standard protocol in Philadelphia to afford all capital defendants a second attorney, and so he was denied equal protection and due process. *See id.* at 26–27. However, Appellant does not reference any policy documents to this effect or advert to any relevant evidence. Therefore, his presentation to this Court is insufficient to establish a constitutional violation. In all events, any constitutional claim based on the lack of a second attorney for mitigation purposes is waived, as it was not raised before the trial court. *See generally Commonwealth v. Moore,* 594 Pa. 619, 627, 937 A.2d 1062, 1066 (2007) (citing *Freeman,* and recognizing that the relaxed waiver doctrine is unavailable for any capital direct appeal filed after May 30, 2003).

5. Appellant acknowledges the rule established in *Grant,* but requests that it not be applied here. However, he does not identify any exception to the *Grant* doctrine that would obtain in the present case. *See, e.g., Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003)

## Penalty Phase Jury Instructions

■ Appellant takes issue with the manner in which the trial court instructed the jury during the penalty phase concerning the finding and weighing of aggravating and mitigating circumstances, and states that counsel "inexplicably" failed to object to these instructions. Because this claim was not raised below, it is waived and cannot be reviewed at this juncture. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Freeman*, 573 Pa. at 560, 827 A.2d at 402 (abrogating the relaxed waiver doctrine for capital direct appeals). To the extent Appellant attempts to raise an assertion of ineffective assistance of counsel, such a claim must await collateral review. *See supra* note 5.

## Non–Statutory Aggravating Factor

■ In his only preserved claim from the penalty-phase of trial, Appellant suggests that the trial court erred in overruling counsel's objection to the prosecutor's alleged introduction of a non-statutory aggravating circumstance. During its summation, the Commonwealth proceeded as follows:

> [PROSECUTOR]: So when we think about aggravators, the aggravator in this case that the Commonwealth has established beyond a reasonable doubt is that during the course

(establishing a narrow exception to *Grant* for cases in which the post-sentence court has conducted an evidentiary hearing on the ineffectiveness claim and resolved it on the merits); *Commonwealth v. Mitchell*, 576 Pa. 258, 269, 839 A.2d 202, 208 (2003) (acknowledging that *Grant* expressed a "strong preference ... to postpone review of all ineffectiveness claims to the collateral process," and that the *Bomar* exception only pertains where the lower court conducted a hearing and provided a full consideration of the issue). Appellant does suggest that there is no need for evidentiary development, but we disagree, as there is little in the present record to indicate whether counsel's stewardship was deficient or whether Appellant suffered any prejudice. *See generally Commonwealth v. Cooper*, 596 Pa. 119, 133, 941 A.2d 655, 664 (2007) ("To prevail on an ineffective assistance of counsel claim, the defendant bears the burden of establishing: 1) an underlying claim of arguable merit; 2) no reasonable basis for counsel's act or omission; and 3) prejudice as a result, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.").

of committing this crime he did so with a felony, and that felony was burglary. Now, on top of the burglary, on top of the shooting, multiple shootings, on top of her being unarmed, on top of her being—

[DEFENSE COUNSEL]: Objection, your Honor.

[PROSECUTOR]:—in her own house—

THE COURT: Overruled.

[PROSECUTOR]:—he did all of that in front of his [sic] kids. In front of her children. And that is the aggravator that we're asking you to consider.

N.T. March 9, 2004 at 20–21.

Appellant contends that these comments were improper, as the permissible aggravating factors are enumerated by statute, and they do not include the fact that the killing occurred in front of the victim's children. While acknowledging that the Commonwealth is permitted some latitude to employ oratorical flair, Appellant argues that advocating for non-statutory aggravators is beyond the scope of such latitude, and references *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221 (1995), and *Commonwealth v. Morales*, 549 Pa. 400, 701 A.2d 516 (1997), for support. In *LaCava*, this Court vacated the appellant's death sentence and remanded for a new sentencing hearing because, during the penalty phase summation, the prosecutor launched into a prolonged tirade concerning drug dealers being a "leech on society" and ruining neighborhoods, and had, in effect, turned the jury's sentencing decision "into a plebiscite on drugs and drug dealers and their destructive effect on society." *LaCava*, 542 Pa. at 191–192, 666 A.2d at 237. The *Morales* court also ordered a new sentencing hearing due to improper prosecutorial argument in the penalty phase; in that matter, the prosecutor had, in effect, invited the jury to impose the death sentence as a means of compensating for the lenient treatment that the criminal justice system had allegedly afforded to other offenders, and as a way of forestalling any similar treatment that might otherwise be given to the defendant. *See Morales*, 549 Pa. at 425–26, 701 A.2d at 528–29. Appellant indicates that this case is similar to *LaCava*

and *Morales* because the Commonwealth relied on "purely extraneous and improper matters" as a basis for sentencing him to death.[6]

For its part, the Commonwealth posits that any issue concerning introduction of a non-statutory aggravator is waived because counsel's objection occurred before the prosecutor mentioned the victim's children or indicated that the factors mentioned should be considered as an aggravator, and no new objection was lodged after the district attorney made the statements of which Appellant now complains. The Commonwealth avers that this is understandable because "it was clear from the prosecutor's preface that 'the aggravator in this case ... is that during the course of committing this crime, [Appellant] did so with a felony, and that felony was burglary.'" Brief for Commonwealth at 33–34 & n. 16.

In our view, the objection can fairly be seen as covering the line of argument that the prosecutor was making concerning extrinsic factors, thus preserving the issue for our present review. Moreover, while the circumstances that the prosecutor emphasized may have been relevant to the grave-risk aggravator had it been presented for consideration, *see* 42 Pa.C.S. § 9711(d)(7), they do not relate to burglary so as to trigger the (d)(6) aggravator. Therefore, the challenged comments were improper, particularly as the prosecutor preceded them with, "Now, on top of the burglary ...," and thus, counsel's objection should have been sustained. The question is whether the court's failure to sustain the objection was harmless beyond a reasonable doubt.

As noted, Appellant argues for a finding of prejudice based on *LaCava* and *Morales*. In each of those decisions, the Commonwealth had encouraged the jury to center its attention on the concept that broad, societal ills could be at least partially remedied by sentencing the defendant to death. In a similar vein, this Court has held that "penalty phase argu-

---

6. Appellant does not take issue with the references to the victim being unarmed and in her own home. In any event, these statements were based on the trial evidence and were within the bounds of permissible advocacy.

ments requesting that the jury send a message [to society] with its verdict are prejudicial *per se.*" *Commonwealth v. DeJesus,* 580 Pa. 303, 330, 860 A.2d 102, 119 (2004); *see also Commonwealth v. Chambers,* 528 Pa. 558, 586, 599 A.2d 630, 644 (1991) (concluding that advocating for a death sentence predicated upon religious writings constitutes reversible error because it suggests that the jury should base its decision on an independent source of law). By contrast, prosecutorial death penalty arguments directed solely to the events underlying the litigation at hand have generally been evaluated on a case-by-case basis for prejudice, even where they have had the arguable effect of misrepresenting Pennsylvania law. *See, e.g., Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621 (1995) (allowing a death sentence to stand notwithstanding the prosecutor's improper (albeit indirect) suggestion that the defendant could be paroled if sentenced to life imprisonment rather than death, where the trial court had issued a curative instruction to the jury).

Presently, the district attorney did not argue for the death sentence as a way to ameliorate the problems of, or send a message to, society at large. Rather, her remark can be construed, at most, to imply that one of the aggravating factors permitted under Pennsylvania law is that Appellant killed Ms. Bryant in front of her daughter. Any misconception in this regard, however, was dispelled by the trial court's subsequent jury charge, in which the court clarified that the only two aggravating factors submitted were that the defendant has a significant history of felony convictions involving the use or threat of violence to the person, *see* 42 Pa.C.S. § 9711(d)(9), and that the defendant committed a killing while in the perpetration of a felony, *see id.,* § 9711(d)(6), specifically, burglary. *See* N.T. March 9, 2004 at 29 ("In this case the felony involved is burglary as I have defined the crime of burglary to you during the trial."). *See generally Commonwealth v. Stokes,* 576 Pa. 299, 306, 839 A.2d 226, 230 (2003) ("A jury is presumed to follow the court's instructions."). The verdict slip likewise recited that only the (d)(6) and (d)(9) aggravators were being submitted for the jury's consideration.

48

The district attorney's passing reference in this regard was also unlike the lengthy diatribe at issue in *LaCava* concerning the evils perpetrated upon society by drug dealers. *See LaCava*, 542 Pa. at 191–92, 666 A.2d at 236 (quoting the prosecutor's protracted speech denouncing individuals who sell illegal drugs). It was a brief, offhand remark that appears to reflect possible momentary confusion on the part of the prosecutor, particularly as she had indicated, immediately prior to the challenged remark, that the sole "aggravator in this case" is that the killing occurred in perpetration of the felony of burglary. Accordingly, the comment does not seem more than minimally prejudicial when viewed within the context of all of the circumstances of the case. *See generally Commonwealth v. Dennis*, 552 Pa. 331, 347, 715 A.2d 404, 411–12 (1998) (reciting that the effect of improper prosecutorial argumentation must be evaluated by "considering all the circumstances of the case"). We therefore find that any error was harmless beyond a reasonable doubt.

### Statutory Review

Having concluded that Appellant's convictions were proper and that none of his claims of error entitles him to relief, we must affirm his sentence of death unless we find that: (i) the sentence was the product of passion, prejudice, or any other arbitrary factor; or (ii) the evidence fails to support the finding of at least one aggravating circumstance. *See* 42 Pa.C.S. § 9711(h)(3). Upon careful review of the record, we are persuaded that the death sentence was not the product of passion, prejudice, or any other arbitrary factor, but resulted from properly introduced evidence that Appellant intentionally and deliberately shot Johnetta Bryant to death. We also conclude that the evidence was sufficient to support the single aggravating factor found by the jury in relation to the killing. Specifically, the fact that Appellant was convicted of burglary in connection with the shooting of Ms. Bryant provides sufficient evidence to support the aggravating circumstance that Appellant committed the killing in perpetration of a felony. *See* 42 Pa.C.S. § 9711(d)(6).

## Conclusion

For the foregoing reasons, we affirm the judgment of sentence. The Prothonotary of this Court is directed to transmit the complete record of this case to the Governor of Pennsylvania in accordance with Section 9711(i) of the Judicial Code, 42 Pa.C.S. § 9711(i).

Former Chief Justice CAPPY and former Justices BALDWIN and FITZGERALD did not participate in the decision of this case.

Chief Justice CASTILLE and Justice EAKIN and BAER join the opinion.