J-S20007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LEE CALVIN KEARNS, III | |
| Appellant | No. 422 WDA 2015 |

Appeal from the Judgment of Sentence January 7, 2013
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0000530-2011

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 26, 2016**

Appellant, Lee Calvin Kearns, III, appeals from the judgment of sentence entered January 7, 2013, in the Court of Common Pleas of Cambria County, following his convictions of two counts of rape of a child, 18 Pa.C.S.A. 3121(c), (the victim was a five-year-old girl) and other charges related to the sexual assaults.[1] After review, we affirm the convictions, but reverse the judgment of sentence in part and affirm in part.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although Kearns purports to appeal from the order denying his post-sentence motion, this appeal properly lies from the judgment of sentence as made final by the denial of post-sentence motions. **_See Commonwealth v. Dreves_**, 839 A.2d 1122, 1125 n.1 (Pa. Super. 2003) (_en banc_). We have corrected the appeals statement accordingly.

The trial court summarized the facts behind Kearns's convictions as follows.

[A.F.], [the five-year old victim, H.F.'s] father and Kearns' stepfather, testified that late in the afternoon of March 9, 2011 he walked into H.F.'s bedroom and observed Kearns grinding his pelvis into H.F.'s pelvis. At the time both Kearns' and H.F.'s pants and underwear w[ere] pushed down around their ankles. [A.F.] testified that he pushed Kearns off H.F. and made him leave the apartment. [A.F.] testified that he was upset and had his wife speak to [the victim] about what had happened.

Brandi Yeckley (Yeckley) testified that she is a caseworker with Cambria County children and Youth Services (CYS) and that in the early afternoon of March 10, 2011 she went to the [victim's] residence to speak with H.F. regarding the incident the day before. Yeckley testified that CYS had been notified early the morning of March 10th about the incident. She testified that she spoke with H.F. privately in [her] bedroom. Yeckley explained that H.F. was reluctant to speak but used two dolls, one representing her and the other Kearns, to show what happened. H.F. removed the dolls['] clothing, laid them down, placing the Kearns doll on top of the H.F. doll and rubbed them together. H.F. told Yeckley that this is what Kearns would do to her on the bed.

Yeckley testified that H.F. reported this happened on multiple occasions and occurred whenever Kearns would help her beat a level in a video game. H.F. indicated that Kearns told her it was a secret and not to tell anyone. H.F. explained that Kearns would rub his penis on her vagina and would then wipe off "goo", referring to semen, from her vagina. Yeckley testified that H.F. used the terms wiener for penis and coochie for vagina.

Julie Wagner (Wagner) testified that she is a detective with the Johnstown Police Department with training and experience interviewing child victims. Wagner testified that she was asked by the Stonycreek Township Police to conduct an interview with H.F. as that department had no female officers and they believed H.F. would be more comfortable speaking with a woman. Wagner testified that the interview took place on March 11, 2011, two days after the incident witnessed by [A.F.], at the Johnstown Public Safety Building. She explained that she spoke privately with H.F. and that H.F. told her that on March 9th she

was playing the Sonic Rush video game in her room with Kearns. That at some point Kearns laid her down on her bed, pulled her pants and underwear down, then pulled his pants and underwear down, climbed on top of her and put his penis on her.

H.F. told her that it happened "a lot of times", that Kearns told her it was a secret, that on some occasions Kearns would rub his penis against her vagina and on others he would put his penis in her vagina and that she did not like how it felt. H.F. told Wagner that when they were done Kearns would wipe off the "goo" and they would put their pants back on. Wagner testified that H.F. denied that there was any oral sex or digital penetration but repeated that Kearns would on occasion put his penis in her vagina. Finally, H.F. testified that when [A.F.] came in and saw them she was upset because Kearns had told it was a secret and now her father knew about it.

H.F. testified that she would play video games in her room with Kearns and that when she got stuck on a level and he helped her he would take off their pants and underwear and lay her on her bed, climb on top of her and rub his penis on her vagina. H.F. testified that Kearns would wipe off the semen and they would get dressed again. She testified that this happened on multiple occasions whenever she got stuck on a level in the game and that Kearns told [her] it was a secret and not to tell anyone.

Doctor Lawrence Rosenberg (Rosenberg) testified that he is a pediatrician with significant training and experience in examining child victims of sexual assault He testified that he examined H.F. on March 14, 2011, three days after the incident, and that during the examination H.F. told him Kearns put his penis in her vagina. Rosenberg testified that his examination revealed H.F.'s hymen to be thinner than is normal and showed scarring that was abnormal and was several months old. Rosenberg testified that neither of these conditions was likely the result of an accident. Finally, he testified that to a reasonable degree of medical certainty the physical evidence was highly suspicious of sexual abuse and that H.F. had been the victim of such abuse.

Trial Court Opinion, 4/25/13 at 3-6.

Following a bench trial on October 10, 2012, the trial court convicted Kearns of two counts each of Rape of a Child, Attempted Rape of a Child, Indecent Assault, and one count of Corruption of Minors. On January 7, 2013, the trial court sentenced Kearns to an aggregate term of 10 to 20 years' imprisonment, followed by 32 years of probation.

Kearns filed a timely appeal, which this Court dismissed due to his counsel's failure to file a brief. Kearns later filed a *pro se* PCRA petition. The PCRA court appointed counsel and subsequently reinstated Kearns's direct appeal rights *nunc pro tunc*. Kearns filed a post-sentence motion, which the trial court denied. This timely appeal followed.

Kearns's first two issues challenge the trial court's decision to permit CYS caseworker Brandi Yeckley and detective Julie Wagner to testify at trial pursuant to the tender years statute, 42 Pa.C.S.A. § 5985.1. "[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Fransen**, 42 A.3d 1100, 1106 (Pa. Super. 2012), **appeal denied**, 76 A.3d 538 (Pa. 2013) (citations omitted).

The tender years exception to the hearsay rule provides that an out of court statement of a minor victim or witness regarding, among others, a crime of sexual assault, is admissible if:

> (1) The court finds in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statements provided sufficient indicia of reliability; and (2) the child either (i) testifies at the proceeding; or (ii) is unavailable as a witness.

- 4 -

42 Pa.C.S.A. § 5985.1. "The tender years exception allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse." ***Commonwealth v. Fink***, 791 A.2d 1235, 1248 (Pa. Super. 2002) (citation omitted). The factors to be considered by a trial court in determining whether the child declarant was likely to be telling the truth when the statement was made include:

> (1) the spontaneity and consistent repetition of the statement(s); (2) the mental state of the declarant; (3) the use of terminology unexpected of a child of similar age; and (4) the lack of motive to fabricate.

***Commonwealth v. Hunzer***, 868 A.2d 498, 510 (Pa. Super. 2005) (citation omitted).

Here, Kearns argues that the trial court failed to hold an *in camera* hearing to determine if the hearsay testimony had sufficient indicia of reliability. A review of the record indicates that there was no *in camera* hearing on the reliability of the hearsay statements. Following Kearns's objection to the testimony of Yeckley and Wagner at the bench trial, the court stated that it would first listen to the witnesses' testimony and then make a determination whether the tender years Exception was satisfied. ***See*** N.T., Bench Trial, 10/10/12 at 83-84. Notably, the record indicates that Kearns did not request an *in camera* hearing to determine the reliability of the hearsay testimony.

The tender years statute requires a party to give notice, including details of the proffer, of the intention to present hearsay evidence under the

exception. **See** 42 Pa.C.S.A. § 5985.1(b). The purpose of the notice requirement is to "provide the adverse party with a fair opportunity to meet the statement." **Id**. Kearns argues that the statute requires an *in camera* hearing before the trial court may admit a hearsay statement pursuant to the exception. However, we conclude that, so long as the notice provision is satisfied, it is incumbent upon the adverse party to identify and object to any issue with the proposed testimony. The trial court is not required to hold an *in camera* hearing on any issue under the statute unless the adverse party raises it. As noted, Kearns did not request a hearing on the reliability of the out-of-court statements. Thus, the trial court was not required to have a hearing on the issue.

We further note that while the trial court did not conduct an *in camera* hearing, it ultimately concluded that Yeckley's and Wagner's testimony clearly established sufficient indicia of reliability to permit the introduction of the hearsay testimony at trial. In the words of the well-reasoned opinion of the trial court:

> Here, as it was a non-jury trial, the [c]ourt did not conduct an in camera hearing but permitted Yeckley and Wagner to testify and then determined whether their testimony was admissible under the tender years exception. In determining that their testimony was admissible the [c]ourt observed: that H.F. was under twelve years old; she had testified; she was describing an enumerated offense; and that the time, content and circumstances of the statements she made to Yeckley and Wagner had sufficient indicia of reliability. N.t. 10/10/12 pp. 92-94. With respect to the issue of reliability the [c]ourt notes that: the statements were made within forty-eight hours of the incident on March 9th; they were consistent with each other and with H.F.'s testimony in

- 6 -

court; the questions asked by Yeckley and Wagner were open ended and not suggestive; they were supported by [Dr.] Rosenberg's testimony; they included descriptions of anatomy and sexual acts a five[-]year[-]old would not be expected to know, including descriptions of an erect penis and ejaculation; and the defense offered no reason to believe that H.F. had fabricated the statements.

Trial Court Opinion, 4/25/13 at 7-8. We agree with the trial court's assessment and are satisfied that there were sufficient indicia of reliability with respect to the statements made by H.F. to Yeckley and Wagner to permit their admission under the tender years exception. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the hearsay statements.

Kearns next argues that the evidence was insufficient to support his conviction of rape of a child where the Commonwealth failed to establish penetration occurred on March 9, 2011. *See* Appellant's Brief at 13. The following standard governs our review of a challenge to the sufficiency of the evidence.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of

law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mauz*, 122 A.3d 1039, 1040-41 (Pa. Super. 2015) (citation omitted). The factfinder, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *See Commonwealth v. Valentine*, 101 A.3d 801, 805 (Pa. Super. 2014), *appeal denied*, 124 A.3d 309 (Pa. 2015). Furthermore, the Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008).

"A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3121(c). Sexual intercourse is defined by statute as follows: "[i]n addition to its ordinary meaning, [sexual intercourse] includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101. This Court has clarified that the term "penetration however slight" is not limited to penetration of the vagina, as entrance in the labia will suffice. *See Hunzer*, 868 A.2d at 505-506.

Here, Kearns essentially argues that despite H.F.'s statements to Detective Wagner that Kearns had inserted his penis into her vagina on prior occasions, the Commonwealth failed to establish that penetration occurred on March 9, 2011, when H.F.'s father observed Kearns "grinding" on top of H.F. Based on our review of the evidence, we disagree. [A.F.] testified that

on March 9, 2011, he walked into H.F.'s bedroom and observed Kearns lying on top of H.F. on the bed and that both had their genitals exposed. *See* N.T., Non-Jury Trial, 10/10/12 at 68. [A.F.] stated that Kearns was "grinding away" against H.F.'s vaginal area. *Id*. at 69. Detective Wagner testified that H.F. told her two days after the incident that Kearns had rubbed his "wiener" on her "coochie." *Id*. at 97-98. Based on the forgoing, the factfinder was presented with sufficient evidence, when viewed in the light most favorable to the Commonwealth, to establish that Kearns penetrated, however slightly, H.F.'s labia with his penis on March 9, 2011. Kearns challenge to the sufficiency of the evidence therefore fails.

Kearns next asserts that the trial court illegally imposed separate sentences for rape of a child and attempted rape of a child, as those crimes merge. *See* Appellant's Brief at 16. "A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary." *Commonwealth v. Snyder*, 870 A.2d 336, 349 (Pa. Super. 2005) (citation omitted).

"Our Courts have long held that where a defendant commits multiple distinct criminal acts, concepts of merger do not apply." *Commonwealth v. Robinson*, 931 A.2d 15, 24 (Pa. Super. 2007) (*en banc*). *See also* 42 Pa.C.S.A. § 9765 ("No crimes shall merge for sentencing purposes unless the crimes *arise from a single criminal act* and all of the statutory elements

of one offense are included in the statutory elements of the other offense.")

(emphasis added).

> The preliminary consideration under Section 9765 is whether the two crimes at issue arose from a single act. This is because [our courts] have long held that where a defendant commits multiple distinct criminal acts, concepts of merger do not apply. Moreover, when determining whether a defendant committed a single act, such that multiple criminal convictions should be merged for sentencing, the proper focus is not whether there was a "break in the chain" of criminal activity, but rather, whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime. If so, then the defendant has committed more than one criminal act. The rationale is to prevent defendants from receiving a "volume discount" on crime.

**Commonwealth v. Yeomans**, 24 A.3d 1044, 1050 (Pa. Super. 2011)

(internal citations omitted).

Here, Kearns correctly asserts that an attempt to commit an offense and the completed offense typically merge for sentencing purposes. The Commonwealth concedes in its brief that the sentences for attempted rape and rape of a child should have merged. **See** Commonwealth's Brief at 12 ("[T]he Superior Court should strike the costs and fines related to those two charges."). We agree.

At trial, the Commonwealth introduced evidence to establish two particular criminal acts: 1) the sexual assault that Kearns was observed committing on March 9, 2011, and 2) the testimony of Dr. Rosenberg, which established that a two- to three-month-old scar on H.F.'s hymen was indicative of prior sexual abuse. These acts formed the basis for the two

counts of rape of a child with which Kearns was charged, and the Commonwealth offered no distinct acts to support the attempted rape charges.

Based on these facts, we are constrained to presume that the charges of attempted rape and rape of a child arose from the same criminal acts and, therefore, necessarily merge for sentencing purposes. Accordingly, we vacate Kearns's judgment of sentence imposed for his convictions on two counts of attempted rape, as those should have merged with his convictions for rape of a child for sentencing purposes. Our reversing of the judgment of sentence for those two convictions does not upset the sentencing scheme. The judgment of sentence as corrected in this memorandum is affirmed in all other respects.

Kearns's final claim challenges the discretionary aspects of his sentence. "It is well settled that [w]hen a challenge to the discretionary aspect of a sentence is raised, an appellant must provide a separate statement specifying where the sentence falls in the sentencing guidelines, what provision of the sentencing code has been violated, what fundamental norm the sentence violates, and the manner in which it violates the norm. Pa.R.A.P. 2119(f)." *Commonwealth v. Sarapa*, 13 A.3d 961, 962 (Pa. Super. 2011) (internal quotes and citation omitted). Even if properly preserved in a post-sentence motion, "such a claim is waived if an appellant does not include a Pa.R.A.P. 2119(f) statement in his brief and the opposing

party objects to the statement's absence." ***Commonwealth v. Foster***, 960 A.2d 160, 163 (Pa. Super. 2008), ***aff'd***, 17 A.3d 332 (Pa. 2011).

Here, Kearns has failed to provide a Rule 2119(f) statement in his brief, and the Commonwealth has objected to this omission. ***See*** Commonwealth's Brief at 12-13. Accordingly, we must find Kearns's challenge to the discretionary aspects of his sentence waived.

Convictions affirmed. Judgment of sentence affirmed in part and reversed in part. Jurisdiction relinquished.

Judge Olson joins the memorandum.

Judge Platt concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/26/2016</u>