J-S50038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DEQUAN FELTON | |
| Appellant | No. 3085 EDA 2016 |

Appeal from the Judgment of Sentence September 6, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002577-2015

BEFORE:  PANELLA, J., MOULTON, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                **FILED SEPTEMBER 08, 2017**

Appellant, Dequan Felton, appeals from the judgment of sentence of eleven and one-half to twenty-three months of incarceration followed by four years of probation, imposed September 6, 2016, following a bench trial resulting in his conviction for violations of the Uniform Firearms Act and simple possession.[1]  We affirm.

We adopt the following statement of facts from the trial court opinion, which in turn is supported by the record.  **See** Trial Court Opinion (TCO), 1/24/17, at 1-4.  On February 6, 2015, Philadelphia Police Officer Chris Ozorowski was on patrol near the 1400 block of North 12th Street in Philadelphia, Pennsylvania.  At approximately 1:30 a.m., Officer Ozorowski

---

[1] **See** 18 Pa.C.S. §§ 6106, 6108, and 6110.2, and 35 P.S. § 780-113(a)(31)).

observed a black Lincoln Navigator with tinted windows drive through a stop sign. He effectuated a traffic stop and called for backup. Officer Ozorowski approached the driver's side of the vehicle, and a second officer approached the passenger's side. The occupants voluntarily rolled down the windows to reveal five passengers in three rows of seats. Appellant was seated in the center row behind the front passenger.

Officer Ozorowski informed the driver that he smelled marijuana, and the driver admitted that they had smoked marijuana earlier in the vehicle. The driver gave consent to search, and the occupants were removed. In the center console, Officer Ozorowski discovered a white bag filled with empty vials, common packaging for marijuana. An examination of the center row showed "the slide" of a handgun visible in the map pocket attached to the rear of the front passenger seat. The gun was visible looking directly down into the pocket. The handgun, with obliterated serial number, was within half an arm's length from Appellant's seat. Officer Ozorowski recovered a pill bottle containing suspected marijuana from the same compartment. Appellant was placed under arrest.

The parties made a number of stipulations at trial: 1) Appellant lacked a valid license to possess a firearm; 2) the firearm was operable and had obliterated serial numbers; 3) the pill bottle contained marijuana; 4) DNA swabs were obtained from the firearm and from Appellant. Additionally, the Commonwealth presented expert testimony that DNA test results were inconclusive, *i.e.*, there was insufficient data to determine that Appellant's

DNA either did or did not match the DNA on the firearm. The Commonwealth also presented transcripts from phone calls Appellant had made during his pretrial incarceration, indicating he felt he could beat the firearms charges and that he had "flushed" an item, potentially drugs, at the police station while handcuffed.

Appellant was convicted on all charges and sentenced to an aggregate of eleven to twenty-three months of incarceration followed by four years of probation. Appellant filed a motion seeking reconsideration of sentence, which the court denied.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive opinion.

On appeal, Appellant raises the following issues for our review:

[1.] Is the evidence sufficient as a matter of law to sustain [Appellant's] conviction for the crimes of 18 Pa.C.S.A. §§ 6106, 6108, and 6110.2 where the evidence does not establish that [Appellant] constructively possessed a firearm recovered from a vehicle and: (i) the firearm was recovered in the opaque map pocket located in the back of the front passenger seat of a vehicle in which he was merely present; (ii) the vehicle was not owned or operated by [Appellant]; (iii) four other individuals were also present in the vehicle; (iv) DNA testing on the gun revealed "inconclusive" results as to whether [Appellant ever handled the gun; and (v) the DNA of the other occupants of the car was never tested?

[2.] Is the verdict for the crimes of 18 Pa.C.S.A. §§ 6106, 6108, and 6110.2 against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice as the evidence does not establish that [Appellant] constructively possessed a firearm recovered from a vehicle and: (i) the firearm was recovered in the opaque map pocket located in the back of the front passenger seat of a vehicle in which he was

- 3 -

merely present; (ii) the vehicle was not owned or operated by [Appellant]; (iii) four other individuals were also present in the vehicle; (iv) DNA testing on the gun revealed "inconclusive" results as to whether [Appellant ever handled the gun; and (v) the DNA of the other occupants of the car was never tested?

Appellant's Brief at 7-8.

First, Appellant claims that the evidence was insufficient to sustain his convictions for firearms not to be carried without a license, carrying firearms on public streets of Philadelphia, and possession of a firearm with altered manufacturer's number. *See* Appellant's Brief at 18. Essentially, Appellant contends that the evidence fails to show he constructively possessed the firearm recovered from the vehicle.[2] *Id.* at 19.

We review a challenge to the sufficiency of the evidence as follows.

In determining whether there was sufficient evidentiary support for a jury's finding [], the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as a verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. The court bears in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

---

[2] Appellant does not identify the elements of the crimes for which he was convicted, and accordingly risks waiver. *See*, *e.g.*, *Commonwealth v. Williams*, 959 A.2d 1252, 1257-58 (Pa. Super. 2008). However, as all of the offenses were possessory firearms offenses, and Appellant challenges possession, we decline to find waiver in this instance.

***Commonwealth v. Diggs***, 949 A.2d 873, 877 (Pa. 2008) (citations omitted). Here, Appellant was convicted of three violations of the Uniform Firearms Act. First, he was convicted for possession of a firearm without a license, which is defined as follows:

> . . . any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106.

Appellant was also convicted of carrying a firearm on public streets of Philadelphia, which is defined as follows:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
>
> (1) such person is licensed to carry a firearm; or
>
> (2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S. § 6108.

Finally, Appellant was convicted of possession of a firearm with an altered manufacturer's number, which is defined as follows:

> No person shall possess a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated.

18 Pa.C.S. § 6110.2.

The only element of these charges which Appellant challenges is possession. As the firearm was not located on Appellant's person, the Commonwealth was required to prove constructive possession, an "inference arising from a set of facts that possession of the contraband was more likely than not." *See Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004). In order to establish constructive possession of a firearm, the Commonwealth must establish that Appellant had "the power to control the [weapon] and the intention to exercise that control." *Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super 2011) (citing *Commonwealth v. Townsend*, 237 A.2d 192 (Pa. 1968)). Constructive possession may be established by the totality of the circumstances. *Id.*

Appellant's main argument centers around a number of cases which state that mere presence is not sufficient to establish constructive possession. *See Townsend*, 237 A.2d at 192; *Commonwealth v. Armstead*, 305 A.2d 1 (Pa. 1973); *Commonwealth v. Hamm*, 447 A.2d 960 (Pa. Super. 1982); *Commonwealth v. Boatwright*, 453 A.2d 1058 (Pa. Super. 1982); *Commonwealth v. Duffy*, 340 A.2d 869 (Pa. Super. 1975); *see also* Appellant's Brief at 18-34. He avers that there was no physical or documentary evidence linking him to the firearm and that, accordingly, the Commonwealth has not met its burden. *See* Appellant's Brief at 32-33.

The cases upon which Appellant relies are distinguishable on their facts. Appellant first cites *Armstead*, where Armstead, a front seat

- 6 -

passenger, was charged with unlawful possession of a firearm. ***Armstead***, 305 A.2d at 2. A firearm was recovered from the middle of the front seat of the vehicle. ***Id.*** Our Supreme Court reversed and vacated the judgment of sentence, noting that the officers' testimony established that they did not observe the weapon when they initially stopped the automobile, and that it was equally as likely that the driver had discarded the weapon as it was that Armstead had control of it. ***Id.*** In the instant case officers stopped the car, removed the passengers, and searched the car. The gun was found in the pocket closest to Appellant, behind the front passenger's seat, well within arm's reach. An inference that the driver had discarded the firearm was not appropriate in this case.

Appellant next cites ***Townsend***, where police stopped a car after seeing a man with a gun. ***Townsend***, 237 A.2d at 193. A gun was subsequently found partially concealed under the front seat. ***Id.*** at 194. Our Supreme Court reversed, finding that there was no evidence of record as to where in the car Townsend was sitting: instead, the arresting officer stated he could not recall Townsend's position. ***Id.*** In the instant case, the arresting officer testified that the gun was found in the pocket attached to the rear of the front passenger seat and that Appellant was sitting in the middle row of the vehicle, behind the front passenger seat.

Appellant next cites ***Duffy***, where Duffy, a passenger in an automobile, was stopped as a result of a traffic violation. ***Duffy***, 340 A.2d at 870. A gun was found far underneath the passenger's side front seat, a

mask and gloves in a glove compartment, and burglary tools in the rear seat. *Id.* On appeal, this Court reversed, finding that the Commonwealth had not proven Duffy knew of the presence of contraband. **Duffy** is distinguishable on two grounds. First, there was no evidence that Duffy had been engaged in criminal activity at the time the firearm was discovered. In the instant case, officers smelled marijuana, and the driver admitted that they had smoked marijuana earlier in the car. Second, in **Duffy**, the firearm was "far underneath" the seat and out of reach; in the instant matter, the firearm was only a few inches away from Appellant's reach and visible from above the "pocket." It was, thus, reasonable to assume that Appellant was aware of and had intent to control the firearm. *Id.*

Appellant's reliance on **Hamm** is equally misplaced. In that case, officers stopped a car after recognizing a passenger, for whom an arrest warrant had been issued. **Hamm**, 447 A.2d 960, 961-62. While effectuating the stop, officers saw that passenger pass an object to another who was a passenger in the front seat. *Id.* Hamm was driving the car, and pulled over when police signaled to him to do so. *Id.* This Court reversed, noting that we may not infer that an appellant knew of the weapon's existence simply because it was hidden in the automobile. *Id.* at 270. Hamm testified before the jury that he was unaware of the presence of any weapon. *Id.* In the instant case, there was evidence of criminal activity occurring prior to the discovery of the weapon. Further, given Appellant's location and the fact that the gun was visible "looking down" into the map

pocket, it was reasonable to assume he was aware of the gun and had intent to control it.

Finally, Appellant cites to **Boatwright**, where officers, responding to a call regarding suspicious men, observed Boatwright in the front passenger's seat of the vehicle. **Boatwright**, 453 A.2d at 1058-59. Boatwright "moved towards his left rear," at which time officers ordered him out of the car. **Id.** A gun was visible on the left rear floor of the vehicle. **Id.** at 1059. This Court reversed, finding that Appellant's mere presence at the scene and "leftward" movement were insufficient to prove constructive possession. **Id.** In the instant case, however, Appellant was involved in criminal activity at the time the gun was discovered and the gun was located directly in front of him, within easy reach.

In short, the totality of the circumstances supports the contention that Appellant was aware of the firearm and more likely than not that he had the ability and intention to control it. **See Parker**, 847 A.2d at 750; **Cruz**, 21 A.3d at 1253. Thus, the evidence was sufficient to support his convictions. **Diggs**, 949 A.2d at 877.

Appellant next claims that his convictions for various violations of the Uniform Firearms Act are against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice. **See** Appellant's Brief at 35. Appellant again argues that the evidence did not establish constructive possession of the firearm, that no forensic evidence linked him to the gun, that the vehicle was not his, and that no officer observed him

reach for the gun. ***Id.*** Appellant also contends that the court placed improper weight on the inconclusive DNA test and Appellant's recorded phone calls. ***Id.*** at 37.

The law regarding weight of the evidence claims is well-settled.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-1136 (Pa. 2011) (citations and internal quotation marks omitted).

Here, the trial court concluded that Officer Ozorowski credibly testified regarding the stop and his observations of the occupants in the vehicle, none of whom claimed responsibility for the firearm. ***See*** TCO at 8. The court also noted that Appellant's phone calls did not reflect the reactions of someone wrongly arrested and prosecuted. ***Id.*** Finally, the court noted that while the DNA test was inconclusive, it did not rule out Appellant as a contributor. ***Id.*** Based on the above, we cannot conclude that the verdicts were so against the weight of the evidence as to shock one's sense of justice

- 10 -

and accordingly, the court did not abuse its discretion. ***Houser***, 18 A.3d at 1136.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2017