J-S13028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NATHAN HOWARD | |
| Appellant | No. 1003 WDA 2015 |

Appeal from the Judgment of Sentence Entered April 28, 2015
In the Court of Common Pleas of Erie County
Criminal Division at No: CP-25-CR-0001240-2014

BEFORE:  LAZARUS, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                 **FILED SEPTEMBER 22, 2016**

Appellant, Nathan Howard, appeals from the judgment of sentence entered in the Court of Common Pleas of Erie County for his conviction of criminal conspiracy.[1,2]  Upon review, we affirm.

On April 26, 2014, police officers conducted surveillance of the El Patio Motel in Millcreek Township as part of an investigation of alleged drug activity.  N.T. Jury Trial, 1/15/15, at 34-36.  Officers received information that an individual known as "NASS" (Carnell Tinson) had been selling heroin

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 903(c).

[2] The jury was deadlocked on Appellant's charges of possession with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia.  35 P.S. §§ 780-113(a)(30), (16), (32), respectively. N.T. Jury Trial - Verdict, 1/20/15, at 5.

from motel room 123.  *Id.* at 35.  While conducting surveillance of the motel, officers observed Appellant and Tinson enter room 123 at 5:07 p.m.  N.T. Jury Trial, 1/16/15, at 17, 18, 23.  At approximately 7:45 p.m., the officers saw Tinson exit room 123, enter a vehicle, and drive away.  *Id.* at 32-35.  Officers followed Tinson but did not apprehend him.  *Id.*

At approximately 8:45 p.m., police officers executed a search of room 123 pursuant to a warrant.  N.T. Jury Trial, 1/15/15, at 37.  Inside the room the officers found Appellant, another individual, an envelope containing a quantity of heroin approximately half the size of a golf ball in plain view on the bed, a digital scale, lottery tickets, and a duffel bag belonging to Appellant.  *Id.* at 37, 39-40.  Inside of the duffel bag was a denim jacket with $1,610 in cash in one of the pockets.  *Id.*  Detective Adam Hardner found a cell phone in plain view in a bedroom.  N.T. Jury Trial, 1/16/15, at 51-53.  Appellant admitted the cell phone belonged to him and consented to a search of the phone.  *Id.*

James Krayeski, a police informant, testified that he had purchased heroin from Tinson on several prior occasions and had contacted Tinson by cell phone to arrange the transactions.  *Id.* at 4-6.  Krayeski had Tinson's cell number and gave it to the officers.  *Id.* 4-6, 8.  There were two incoming text messages on Appellant's cell phone originating from Tinson's cell phone number.  *Id.* at 53-57.  When Detective Hardner read the text messages out loud to Appellant, Appellant stated, "that mother fucker set me up."  *Id.* at 54.  These text messages, sent at 8:31 p.m. and 8:42 p.m.,

stated, respectively, "flush the work" and "they are out back behind the building." *Id.* at 57. Detective Hardner testified that, in his experience, "work" is a term that refers to drugs. *Id.* Lieutenant Michael Nolan of the Erie Police Department Drug and Vice Unit testified that drug dealers typically accumulate large amounts of cash and use lottery tickets as packing material for heroin. N.T. Jury Trial, 1/15/15, at 46-47). Detective Hardner testified that, based on his experience, the text message "flush the work" would mean "flush the drugs down the toilet because the police are there." N.T. Jury Trial, 1/16/15, at 57.

After being found guilty of criminal conspiracy, Appellant filed a post-sentence motion for a new trial. The trial court denied Appellant's motion and filed a memorandum opinion on June 4, 2015. Appellant timely appealed. The trial court adopted its June 4, 2015 memorandum opinion as its Pa.R.C.P. 1925(a) opinion.

On appeal, Appellant presents two issues for our review.

1) The jury's verdict in this case was against the weight of the evidence.

2) The court erred in admitting the text messages since they were not authenticated by law enforcement as being those of the defendant in accordance with Pennsylvania Rule of Evidence 901.

Appellant's Brief at 2.

In his challenge to the weight of the evidence, Appellant argues the evidence showed only that he was present in the motel room when the

- 3 -

search warrant was executed and that the text message stating "flush the work" did not prove Appellant was aware the drugs were in the room. Appellant's Brief at 6. Appellant further argues that since the other person in the room with him was not charged and the jury was deadlocked on the charge of possession with intent to deliver while convicting him of conspiracy for the same crime, the verdict should shock the conscience of this Court. Appellant's Brief at 6.

Our standard of review when addressing a weight claim is well settled.

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008) (citations omitted).

Here, the trial court concluded the jury's verdict was not against the weight of the evidence so as to shock one's sense of justice reasoning,

The evidence at trial established that a black male known as NASS (Carnell Tinson) was dealing heroin from Room 123 of the El Patio Motel. On April 26, 2014, [Appellant] and Tinson entered the room together and approximately 2 ½ hours later Tinson left and drove away in a vehicle. One hour later the police executed a search warrant for the room. The police found a baggie of heroin in plain view on a bed, a digital scale, lottery tickets for packaging heroin, and $1,600.00 in [Appellant]'s duffle bag in the room. A cell phone was recovered. It was [Appellant]'s and contained two (2) recent text messages "Flush the work" (meaning the heroin) and "They R Out Back Behind the Building["] (referring to the police). The phone number the text originated from belonged to NASS (Tinson) and had been used as a contact number to facilitate prior drug transactions.

Trial Court Opinion (T.C.O.), 6/4/15, at 1.

The facts of record support the trial court's conclusion that the jury could reasonably infer Appellant's guilt from this evidence. *Id.* As such, the trial court did not abuse its discretion in determining that the jury's verdict was not against the weight of the evidence so as to shock one's sense of justice.

Appellant next argues the trial court erred in admitting text messages from Appellant's cell phone into evidence as they were not properly authenticated under Pa.R.E. No. 901. Appellant claims that without these messages the Commonwealth could not prove a criminal conspiracy. The messages received on Appellant's cell phone from Tinson's cell phone stated, "flush the work" and "they are in the back of the building." Appellant's Brief at 7.

Our standard of review for admissibility of evidence is well-established.

The admission of evidence is solely within the province of the trial court, and a decision thereto will not be disturbed absent a showing of an abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will discretion . . . is abused.

*Commonwealth v. Murray*, 83 A.3d 137, 155-56 (Pa. 2013) (citations and quotation marks omitted).

As Appellant correctly notes, this Court in *Commonwealth v. Koch*, 39 A.3d 996 (Pa. Super. 2011),[3] in an apparent case of first impression, addressed authentication of a text message as a prerequisite to its admissibility into evidence. We held that emails and text messages are documents subject to the same requirements for authenticity as non-electronic documents generally. The consistent difficulty in authenticating e-mails and text messages is establishing authorship, as it is generally conceded that cellular phones are not always exclusively used by the person to whom the phone number is assigned. Accordingly, authentication of

_____

[3] In *Koch*, in a unanimous published opinion ordering a new trial, this Court reversed the trial court's decision to admit the contested text messages as sufficiently authenticated and not as inadmissible hearsay. Our Supreme Court accepted the Commonwealth's appeal to address the question of the "proper manner in which cell phone text messages can be authenticated and whether and when such messages are inadmissible hearsay." *Commonwealth v. Koch*, 106 A.3d 705, 706 (Pa. 2014) (plurality) (per curiam). Our Supreme Court evenly divided and affirmed the decision of this Court.

electronic communications requires more than confirmation that the phone number or address belongs to a particular person. Authentication requires some evidence tending to show the identity of the defendant as the person who either sent or received the message(s). This may be shown through circumstantial evidence. In *Koch*, we held that the Commonwealth failed to authenticate the text messages in question, as there were no contextual clues in the messages that revealed that the defendant was the sender. We further concluded that the defendant's physical proximity to the phone was of no probative value as to whether she authored the messages days and weeks before. Significantly, the Commonwealth conceded it could not confirm that the defendant was the author of the text messages and acknowledged that the defendant did not write some of the messages that referred to her in the third person. The Commonwealth was able to establish only that it accurately transcribed the text messages from the defendant's phone. Without some evidence, even circumstantial, that the defendant sent the messages, we held that the trial court in *Koch* improperly admitted the messages, since they were not properly authenticated.

In its memorandum opinion, the trial court held that the text messages were properly admitted into evidence based upon "the phone numbers, relation of the parties, attendant circumstances before and after the texts and distinctive characteristics of the texts in light of the events occurring." T.C.O., 6/4/15, at 1 n.1. We find no error as to sufficient

authenticity of the text messages as a prerequisite to their admission into evidence in this case. Appellant does not dispute that the messages at issue were sent from the phone owned by Tinson, a known drug dealer. Nor does Appellant dispute the meaning of the messages intended to relate to the recipient that the drugs should be flushed down the toilet, as the police were outside the building. The question remaining is whether the text messages were intended for and received by Appellant. Sufficient circumstantial evidence exists here to indicate that Appellant was the intended recipient and in fact the recipient of the text messages. The police previously observed Tinson, a known drug dealer, enter the motel room with Appellant. A short time later, Tinson left and thereafter, pursuant to a warrant, the room was searched by police. Drugs and a cell phone admittedly owned by Appellant were found in the room. When police read the subject messages to Appellant, he did not deny they were intended for him, but rather, tacitly admitted receipt of the messages by his response that Tinson had set him up. Moreover, there is no evidence that anyone other than Appellant and one other person were in the motel room during the relevant time period. The temporal proximity of these events, together with Appellant's admission of ownership and response to the text messages present sufficient circumstantial evidence to authenticate the text messages as intended for and received by Appellant immediately prior to the police entering the motel room. Although Appellant's second issue as phrased does not contend the trial court erred by admitting text messages that constituted inadmissible

hearsay, Appellant did raise the argument in post-trial motions and developed the issue in the argument section of his brief. Because the hearsay issue is fairly contemplated by the overall issue of admissibility of the test messages, we shall address his hearsay argument. *See* Pa.R.A.P. 2116(a) ("The statement [of questions involved] will be deemed to include every subsidiary question fairly comprised therein.").[4]

Here, the trial court found the texts were admissible as a co-conspirator's statement. *See Commonwealth v. Stocker*, 622 A.2d 333, 344 (Pa. Super. 1993) ("The co-conspirator exception applies to hearsay statements made during the course of, and in furtherance of a conspiracy. The foundation required is proof, by a fair preponderance of the evidence, that a conspiracy existed."). Howard argues that the Commonwealth had not met its burden of demonstrating a conspiracy existed before introducing the texts. However, the record shows that Howard and Tinson were seen entering the motel together, that Howard remained in the motel room when Tinson left, and that Howard acknowledged the text messages were intended for him. These factors, combined with the totality of the circumstances surrounding the text conversation, were sufficient to meet the preponderance of the evidence burden of proof of a conspiracy.

_____

[4] Further, we note Appellant was not ordered to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he did not do so.

The text messages were properly authenticated. Further, the text messages at issue were admissible as an exception to the rule against hearsay since they were statements made by Tinson, a co-conspirator, in furtherance of the conspiracy to possess heroin with intent to deliver. We find no error in the trial court's admission of the text messages.

Judgment of sentence affirmed.[5]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2016

_____

[5] Following submission of briefs, Appellant filed a *pro se* Motion for Stay, suggesting his appeal "should be put on stay, and the appellant should be appointed "New Counsel, someone who will represent the appellant zealously." Motion for Stay, 6/27/16, at 2. In his motion, Appellant raises issues relating to actions taken by trial and appellate counsel. Absent circumstances that do not exist here, "claims of ineffective assistance of counsel are to be deferred to PCRA review . . . and such claims should not be reviewed upon direct appeal." **Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013) (reaffirming **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002). Therefore, we deny Appellant's Motion for Stay.