J-S62013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD RAMSEY | |
| Appellant | No. 2198 MDA 2015 |

Appeal from the Judgment of Sentence October 19, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004499-2013

BEFORE:  GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:               **FILED SEPTEMBER 30, 2016**

Appellant Edward Ramsey appeals from the October 19, 2015 judgment of sentence entered in the Dauphin County Court of Common Pleas following his jury trial conviction for robbery (threat of immediate serious bodily injury).[1]  We affirm.

The trial court accurately sets forth the factual and procedural history in its Pa.R.A.P. 1925(a) opinion and we have no need to restate them here.[2] 1925(a) Opinion, 3/16/2016, at 1-8.

Appellant raises the following issues on appeal:

---

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

[2] On page one of its Pa.R.A.P. 1925(a) opinion, the trial court states the jury trial occurred in 2016, however, the jury trial actually occurred in 2015.

I. Did not the court err in denying [Appellant's] motion to preclude the Commonwealth from introducing testimony from an expert in handwriting analysis when such testimony was improper expert testimony and was otherwise irrelevant?

II. Did not the [trial] court abuse its discretion by failing to grant [Appellant] a new trial on the basis that the guilty verdict was against the weight of the evidence?

Appellant's Brief at 5 (unnecessary capitalization omitted).

Appellant's first issue challenges the admission of expert testimony. This court applies the following standard of review in cases involving the admission of expert testimony:

> [T]he admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

*Commonwealth v. Watson*, 945 A.2d 174, 176 (Pa.Super.2008) (internal quotation marks and citations omitted).

Appellant's second issue challenges the weight of the evidence. "One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa.2013) (quoting *Commonwealth v. Widmer*, 744 A.2d 745 (Pa.2000)). A weight of the evidence claim concedes that the Commonwealth introduced sufficient evidence. *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa.Super.2006), *appeal denied*, 911 A.2d 933 (Pa.2006). A trial judge should not grant a new trial due to "a mere conflict in the testimony or

because the judge on the same facts would have arrived at a different conclusion." *Clay*, 64 A.3d at 1055. Instead, the trial court must examine whether "'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* (quoting *Widmer*, 744 A.2d at 752). Only where the jury verdict "is so contrary to the evidence as to shock one's sense of justice" should a trial court afford a defendant a new trial. *Id.*

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Richard A. Lewis, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* 1925(a) Opinion, at 8-15) (finding: (1) opinion of handwriting expert properly admitted where: expert had specialized knowledge beyond that of layperson; expert's analysis and conclusion were based on reasonable degree of scientific certainty; expert concluded Appellant probably wrote note; expert testified as to factors considered in her determination and her analysis; expert's opinion fell at top of 9-point scale, which is more refined scale used and recommended by those in her profession; and expert's work was peer-reviewed; (2) expert opinion: relevant where it evidenced Appellant's intent when he entered bank and testimony made material fact, i.e., who wrote note, more or less likely, and not so prejudicial as to require exclusion; and (3) verdict not against weight of evidence where: bank employee testified that his identification of

- 3 -

Appellant as person who robbed bank was based on "first hand" experience on date of incident and weight to be afforded to fact that employee had seen email from bank with Appellant's picture was for jury to determine; although expert in fingerprint analysis could not determine age of fingerprint, bank employee's testimony established Appellant exited from bank and touched door where print was retrieved; and, as discussed above, court properly admitted testimony of handwriting expert).  Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2016

ORIGINAL

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
v. : 4499 CR 2013
: (2198 MDA 2015)
:
EDWARD RAMSEY : CRIMINAL

## MEMORANDUM OPINION

Appellant, Edward Ramsey ("Appellant" or "Ramsey") is appealing this Court's judgment of sentence entered October 19, 2015. This opinion is written pursuant to Pa.R.A.P. 1925(a).

## PROCEDURAL HISTORY

Appellant, Edward Ramsey was charged with a single count of Robbery – Threat of Immediate Bodily Injury.[1] A jury trial was held on August 18-19, 2016, at the conclusion of which Appellant was found guilty.

A sentencing/revocation hearing was held on October 19, 2015, at which time Appellant was sentenced to a term of incarceration for sixty (60) to one-hundred twenty (120) months in a State Correctional Institution.[2] He was also ordered to pay the costs of prosecution, a fine of $200 and restitution in the amount of $550. Timely Post-Sentence Motions were filed requesting a new trial or arrest of judgment and modification of sentence. Following review of the motions and the Commonwealth's response, this Court denied relief by order dated November 19, 2015.

---

[1] 18 Pa.C.S. §3701(A)(1)(ii).

[2] At docket nos. 3365 CR 2013 and 4497 CR 2013, Appellant pled guilty to the summary offense of criminal trespass and one count of escape. Appellant was sentenced on these dockets at the October 19, 2015, hearing. On the same date his parole was revoked and he was resentenced at docket nos. 1624 CR 2009, 5886 CR 2009, and 1170 CR 2010. None of these sentences are at issue in the instant appeal.

The instant appeal to the Pennsylvania Superior Court was timely filed on December 14, 2015, and raises the following issues for review:

1.    The court erred in denying Defendant's motion to preclude the Commonwealth from introducing testimony from an expert in handwriting analysis. The expert testified that she could give "no conclusive opinion." Such testimony was improper expert testimony under Pa.R.E. 702 and was otherwise irrelevant and inadmissible under Pa.R.E. 402 and 403. Any minimal relevance was outweighed by the tendency of such evidence to unduly prejudice Defendant.

2.    The court abused its discretion in finding that the jury's verdict was not against the weight of the evidence. The verdict was against the weight of the evidence so as to shock one's sense of justice. First, the identification testimony of the complaining witness was tainted by a photograph that was shown to the witness prior to trial. Second, the Commonwealth's expert in fingerprint analysis could not give a temporal nexus for his conclusion, i.e., he could not testify that Defendant's fingerprints were placed at the crime scene at the time of the robbery. Third, the Commonwealth's expert in handwriting analysis could not render a conclusive opinion that Defendant wrote the note that was handed to the complaining witness.

For the reasons set forth below, this Court finds that Appellant's claims on appeal are without merit.

## FACTUAL BACKGROUND

The jury trial held in this matter established the following facts: On June 3, 2013, the Mid Penn Bank ("bank") located at 4509 Derry Street, Swatara Township, Pennsylvania, was robbed in the early afternoon. Mr. Luciano DiCesare ("Mr. DiCesare") was working as a teller at service counter number one when, between 1:00 and 2:00 p.m., a black male got on line behind a female who was conducting a transaction with him. (Notes of Testimony at 33-35; 50).[3] When the transaction was completed, the male approached Mr. DiCesare's window and placed a note on the

---

[3] Hereinafter "N.T."

2

counter which read, "Give me $100.00 and $50.00, no die [sic] pack or funny stuff. If anything happen [sic] before I get out the door I shoot you 1st." (N.T. at 38; 53; Commw. Exh. 1). As Mr. DiCesare was reading the note and mentally processing what was happening, the male was mumbling "give me all your hundreds and fifties." (N.T. at 43). Per his training, Mr. DiCesare handed over $550, retained the demand note and when the assailant left, sounded the silent alarm. (N.T. at 35-38).

While the event was occurring, Mr. DiCesare observed the robber from approximately 2 ½ feet away in an attempt to remember as many details of his appearance as possible. (N.T. at 38; 41-42). When the police arrived a few minutes later, he provided a description to Swatara Township Police officers. (N.T. at 39; 45). The assailant was described as an African American male approximately 5' 10" tall and weighing around 230 pounds. (N.T. at 36; 54-56). He wore dark rimmed glasses, a white V-neck T-shirt, dark shorts, a dark hat and scruffy beard. (*Id.*) Mr. DiCesare observed the robber leave the bank through the front double doors and turn right on the street. (N.T. at 39; 43). At trial, Mr. DiCesare positively identified Appellant as the person who passed the note and took the money from him at the bank on June 3, 2013 and as the person in the still photograph obtained from the security video that day. (N.T. at 45-46).

Detective David Horner ("Det. Horner") was called to the crime scene to photograph and process the scene for physical evidence. (N.T. at 62). Det. Horner is the evidence custodian and crime scene technician for the Swatara Township Police Department. (N.T. at 62). He photographed the demand note on the teller counter before collecting it for processing. (N.T. at 63). Det. Horner viewed the security video to

3

determine where he should take photographs and dust for fingerprints. (N.T. at 63-64). He checked the teller counter and the bank doors for fingerprints. (N.T. at 65-68). None were found in the teller area but, three were lifted from the interior part of the exterior door.[4] As police did not have a suspect on the date of the incident, Det. Horner processed the fingerprints and sent them to the Pennsylvania State Police ("PSP") Crime Lab for analysis and possible identification. (N.T. at 68). Horner also sent the demand note to the PSP Crime Lab for handwriting analysis. (N.T. at 69). Later, when Appellant became a suspect in the investigation, a handwriting sample was obtained from him for purposes of comparison. (*Id.*)

With regard to the fingerprints submitted to the PSP, Trooper James Petti ("Tpr. Petti") was assigned to analyze them. Tpr. Petti is an AFIS examiner within the PSP Bureau of Forensic Services wherein he is responsible for the evaluation of fingerprint – related evidence. (N.T. at 76). Following questioning on his qualifications, he was admitted to testify as an expert witness. (N.T. at 76-81).

To analyze the fingerprints submitted by the Swatara Township Police Department, Tpr. Petti utilized the ACE-V (analysis, comparison, evaluation and verification) methodology. (N.T. at 86-92). He concluded that one fingerprint, a right index number two finger, belonged to Appellant upon comparison with a known print. (N.T. at 93-94). Tpr. Petti memorialized his analysis and findings in a report that the Commonwealth admitted into evidence at trial. (N.T. at 106; Commw. Exh. 4). Tpr. Petti

---

[4] The entrance to the bank consisted of two sets of double glass doors – one exterior set and one interior set – with a breezeway in between. (N.T. at 67).

4

rendered his opinion based upon a reasonable degree of scientific certainty. (N.T. at 95).

The Swatara Township Police also submitted the demand note to the PSP for analysis. Lieutenant Sandra Miller ("Lt. Miller") is the Division Director of the Policy and Program Services Division of the PSP Bureau of Research and Development. (N.T. at 108). At the time of the incident, Lt. Miller was a forensic/questioned documents examiner in the Questioned Documents Laboratory of the PSP Crime Lab and was called upon to examine the note. (N.T. at 108). Lt. Miller testified to her education, training experience and other professional credentials. (N.T. at 108-114). This Court admitted her to testify as a handwriting expert. (N.T. at 114).

Lt. Miller examined the demand note that had been presented at the bank robbery. She followed a several step procedure to make an impressed writing specimen for the purpose of comparison to a known writing sample obtained from Appellant. (N.T. at 116-128). Upon comparison with the document written by Appellant, Lt. Miller concluded that the writer probably did write the handwriting found on the demand note. (N.T. at 124). This conclusion fell near the top of the lab's nine point opinion scale which ranges from one (1) "elimination of a writer" to nine (9) "did write." (N.T. at 128). Lt. Miller's opinion was rendered within a reasonable degree of scientific certainty and memorialized in two reports. (N.T. at 128-129; Commw. Exhs. 5, 6).

Detective James Moyer ("Det. Moyer") responded to the bank robbery call on June 3, 2013, and assisted Det. Horner in the processing of the crime scene including the collection of fingerprints. (N.T. at 155-157). He also reviewed security video from

5

neighboring businesses in furtherance of the investigation. (N.T. at 157-158). According to Det. Moyer, as of that date, police had no suspects so the investigation was "tabled" while they waited for lab results. (N.T. at 158-159).

The investigation was reopened upon receipt of the impressed writing from the PSP. Upon examination of the impressed writing, Det. Moyer observed the word "Anderson", a listing of several cities, and numbers that appeared to be telephone numbers and/or zip codes. (N.T. at 159-160). One of the numbers belonged to Ritescreen Corporation in Elizabethville, Pennsylvania. (N.T. at 160). Det. Moyer spoke to officials at Ritescreen and discovered that some of the numbers on the note corresponded with trailer numbers for tractor-trailer trucks. (N.T. at 160-161). Two trailers with the numbers 3005 and 3051 had travelled into Pennsylvania on May 23rd and were subcontracted to Anderson Logistics. (N.T. at 161). When Det. Moyer conducted further investigation at Anderson, he discovered that those particular trailers had been sublet to UTS. (N.T. at 161).

Personnel at UTS confirmed that those trailers were driven in tandem by Appellant and an individual named Ricky Walker ("Mr. Walker"). (N.T. at 161). Mr. Walker has known Appellant since they were children. (N.T. at 138). During June 2013, he had been working with Appellant as part of a truck driving team for UTS. (N.T. at 138-140). The pair had a regular route starting in Carlisle, Pennsylvania with stops in Luray, Virginia, Menomonie, Wisconsin, Des Moines, Iowa and returning to Carlisle. (N.T. at 139). The pair would share the truck cab and alternate driving and sleeping. (N.T. at 139-140).

6

A few days prior to June 3, 2013, Walker and Appellant had finished delivering a load on their typical route. (N.T. at 141-142). The opportunity for a one-man trip to New Hampshire arose and, according to Walker, Appellant took it. (N.T. at 141-142). Sometime in the afternoon of June 3, 2013, Walker received a call and learned that the load had never made it to New Hampshire. (N.T. at 142). Later, he was contacted by his employer, UTS, about the discovery of the abandoned trailer on Division Street in Harrisburg, Pennsylvania. (N.T. at 143-144). Walker was instructed to rent a truck and make the trip to New Hampshire to complete the deliveries. (N.T. at 143-144). He made the deliveries and returned the next day. (N.T. at 144). Through his investigation, Det. Moyer verified with UTS that this story was accurate. (N.T. at 161-162).

As Det. Moyer now had a suspect in mind, he obtained Appellant's driver's license photo from PennDOT. (N.T. at 162). A comparison was made with the bank's security video footage which revealed that the person on the video had physical characteristics which were very similar to Appellant's. (N.T. at 162). The driver's license information stated that Appellant's height is 5'11". (N.T. at 163).

Det. Moyer continued the investigation by speaking with Mr. Walker and with Appellant's wife. (N.T. at 163). He went to see Appellant's wife to request consent to search his clothing. She provided him with a black hat and black shorts. (N.T. at 162-163). Det. Moyer testified that the black hat and black cargo style shorts recovered from Appellant's wife matched the clothing worn by the suspect in the bank security video. (N.T. at 163-164).

7

Mr. Walker testified to keeping a stenographer's tablet in the cab on which he kept his notes. (N.T. at 140-141). He also identified the demand note as a sheet of paper that could have come from the tablet he always kept in the truck. (N.T. at 141).

Christopher Zampogna, the security officer for Mid Penn Bank testified that upon a search of its database he determined that Appellant was not a customer of the bank. (N.T. at 175-176).

## DISCUSSION

Appellant first challenges this Court's ruling on the admission of the handwriting expert's testimony. Initially we note that when an appellant challenges to the admissibility of evidence such claims are reviewed under an abuse of discretion standard. The Supreme Court case of *Commonwealth v. Alicia* is instructive on the well-established principles regarding the admissibility of evidence as well as expert testimony:

> [A]dmissibility of evidence is within the sound discretion of the trial court, and this Court will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. *Commonwealth v. Flor,* 606 Pa. 384, 998 A.2d 606, 623 (2010). An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. *Commonwealth v. Eichinger,* 591 Pa. 1, 915 A.2d 1122, 1140 (2007).

> Under our Rules of Evidence, expert testimony is permitted when the expert's scientific, technical, or other specialized knowledge is beyond that of the average layperson and will help the fact-finder to understand the evidence or determine a fact in issue. Pa.R.E. 702(a) and (b); *Commonwealth v. Lopez,* 578 Pa. 545, 854 A.2d 465, 470 (2004).

> *Commonwealth v. Alicia*, 625 Pa. 429, 440-41, 92 A.3d 753, 760 (2014)(footnote omitted).

8

Pennsylvania Rule of Evidence 702 governs the admissibility of testimony by expert witnesses. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

On appeal, the claim is that Lt. Miller's testimony should have been precluded because she stated that she could "give no conclusive opinion." Rule 702 explicitly says that if a witness is qualified as an expert by meeting the criteria set forth in the rule, he or she "may testify in the form of an opinion or otherwise...." Appellant is asserting that since a "conclusive opinion" was not rendered, the Court improperly permitted to testify as an expert. We disagree.

The Pennsylvania Courts have held that it is not required that an expert witness testify using "magic words." *Commonwealth v. Baez*, 554 Pa. 66, 101, 720 A.2d 711, 728 (1998); *Commonwealth v. Spotz*, 756 A.2d 1139, 1160-61 (Pa. 2000). Rather, courts must look to the substance of the testimony to determine whether the requisite reasonable certainty has been established instead of a foundation of speculation. *Id*. Viewing Lt. Miller's testimony as a whole, this Court finds that she was properly admitted as an expert under Rule 702.

9

In order to qualify as an expert witness, the Pennsylvania Supreme Court has held that:

> ...a witness must possess, at a minimum, "more expertise than is within the ordinary range of training, knowledge, intelligence, or experience." The test is "whether the witness has a reasonable pretension to specialized knowledge on the subject matter in question."
>
> Bennett v. Graham, 552 Pa. 205, 209-10, 714 A.2d 393, 395 (1998)(internal citations omitted).

Lt. Miller testified to the handwriting analysis of the demand note used by the perpetrator of the bank robbery. It is beyond contention that the specialized knowledge possessed by her is well beyond that possessed by the average lay person on the jury. Lt. Miller testified to her education and training which included a Bachelor of Science Degree from Penn State University in the administration of justice field, two years of full time on the job training with the PSP, continuing training courses at the Rochester Institute of Technology, the FBI, the Canon photocopier headquarters, the BIC factory, the Pennsylvania Lottery Commission, the Bureau of Alcohol, Firearms and Tobacco. (N.T. at 109-110). At the PSP, she was trained by working side by side with Questioned Document Examiners who had a combined length of experience of 40 – 50 years. (*Id.*) Lt. Miller also testified to being a member of the American Academy of Forensic Scientists and the Mid-Atlantic Association of Forensic Scientists. (N.T. at 111). She has also testified as a qualified expert in court cases 12-15 times. (N.T. at 111-112). It is quite clear that Lt. Miller is highly educated with many years of pertinent experience working with questioned documents that would qualify her as a hand writing expert.

With respect to Lt. Miller's examination of the demand note, her analysis and ultimate conclusion were presented within a reasonable degree of scientific certainty

10

that Appellant was probably the writer of the demand note. (N.T. at 127-129). Appellant takes issue with the fact that Lt. Miller stated Appellant probably did write the demand note. However, review of her testimony reveals the extensive analysis and consideration of many factors utilized in reaching her conclusion. Lt. Miller's opinion fell at the top of a 9-point opinion scale used by the PSP which is more refined and extensive than the 5-point scale used by other laboratories. (N.T. at 125-129). She explained that it is her preference to use the 9-point scale because it allows her to form the opinion to her level of confidence. (N.T. at 128). Additionally, Lt. Miller said that the American Society for Testing Materials recommends the 9-point scale. (N.T. at 131). Further, her work and conclusion is peer reviewed. (N.T. 129-130). This Court reiterates that an expert is not required to provide "magic words" for the testimony to be properly admitted under R. 702. *See Baez; Spotz, supra.* Viewing Lt. Miller's testimony as a whole, the evidence was properly admitted as her knowledge is well beyond a layperson's knowledge and her conclusions rose to the level of a reasonable degree of scientific certainty.

Appellant also argues that Lt. Miller's testimony should not have been admitted because it is irrelevant and inadmissible under Pa.R.E. 402 and 403, and any minimal relevance is outweighed by the prejudicial nature of the evidence. Again, this Court disagrees.

The well-established rules of determining the admissibility of evidence have been stated by Pennsylvania courts for many years, as follows:

> In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the

11

prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*****

The threshold inquiry with admission of evidence is whether the evidence is relevant. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact.

Otherwise relevant evidence may be excluded if its probative value is outweighed by its potential for prejudice. The probative value of the evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence.

*****

However, evidence will not be prohibited merely because it is harmful to the defendant. Exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. *Commonwealth v. Antidormi*, 2014 PA Super 10, 84 A.3d 736, 749-50 *appeal denied*, 626 Pa. 681, 95 A.3d 275 (2014)(internal citations and quotation marks omitted).

The demand note is evidence of the actor's intent when he entered the bank and approached Mr. DiCesare's teller station. Lt. Miller's testimony was relevant to the jury's determination of who was the person that presented the note with the intent to rob the bank. The testimony clearly made a material fact, namely who presented the note, more or less probable. Appellant has not given this Court a single reason why he believes that this relevant evidence was so prejudicial it should have been excluded. As state above, evidence will not be prohibited merely because it is harmful to the defendant. *Antidormi*, *supra*.

12

Appellant next challenges the jury's verdict as being against the weight of the evidence. The offense for which Appellant was convicted is defined, in pertinent part, as follows:

Appellant contends that the verdict is against the weight of the evidence for three reasons which we will address in order. Initially, this Court notes that when the weight of the evidence challenged, our Supreme Court has stated that:

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The fact finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Weathers*, 95 A.3d 908 (Pa. Super. 2014) *citing Commonwealth v. Diggs*, 597 Pa. 28, 949 A.2d 873, 879–80 (Pa. 2008) (internal citations omitted). When a defendant motions for a new trial based on a weight of the evidence claim, he concedes that sufficient evidence exists to sustain the jury's verdict. *Commonwealth v. Rosette*, 863 A.2d 1185, 1191-1192 (Pa. Super. 2004).

Appellant's first argument in support of his weight of the evidence challenge contends that the identification testimony of Mr. DiCesare was tainted by a photograph that was shown to him prior to the trial. Without the benefit of any specifics regarding what photograph was shown and when, this Court surmises that the reference is to an email circulated by bank security in August 2013 that attached a picture of the person

13

arrested for the robbery. (N.T. at 45-46). However, this argument has no merit as Mr. DiCesare unequivocally testified that his identification of Appellant as the person who robbed him on June 3, 2013, was based on his "[f]irsthand experience" on the date of the incident. (N.T. at 46). The weight and credibility to be afforded to the fact that Mr. DiCesare had seen the email from bank security prior to the preliminary hearing is a duty within the purview of the jury. This Court finds that it is entirely reasonable that the jury accepted Mr. DiCesare's testimony regarding the basis of his identification testimony.

Next, Appellant argues that the verdict is against the weight of the evidence because the expert in fingerprint analysis could not give a "temporal nexus for his conclusion." This position is, again, without merit. Tpr. Petti testified extensively regarding his analysis methods and the "ten points of correspondence" between the latent print from the bank and the known print from Appellant that led him to conclude within a reasonable degree of scientific certainty it belonged to Appellant. (N.T. at 86-95). Although he did state that could not tell the age of the print, Mr. DiCesare's testimony clearly described Appellant's exit from the bank and what Appellant had touched including the doors where the print was found. (N.T. at 39; 43; 59-60). Additional corroboration for the areas touched by Appellant during the robbery was provided by the bank's security video which was reviewed by Detectives Horner and Moyer. (N.T. at 63-64; 66-69; 72-73; 156-157). Again, it is within the purview of the jury's responsibilities to consider all evidence presented, resolve any conflicts and afford appropriate weight to each fact adduced at trial.

14

Finally, the Appellant argues that the verdict is against the weight of the evidence because Lt. Miller did not render a "conclusive opinion" that Appellant wrote the demand note. This issue has already been addressed above and, for the same reasons, this Court finds that is has no merit.

After review of the evidence, the verdict does not shock this Court's sense of justice. In conclusion, this Court finds that Appellant's judgment of sentence should stand.

_____
RICHARD A. LEWIS, PRESIDENT JUDGE

MEMORANDUM DATE: *March 16, 2016*

DISTRIBUTION:
Brian Hokamp, Esq., Dauphin Co. District Attorney's Office *IO*
James J. Karl, Esq., Dauphin Co. Public Defender's Office *IO*
Clerk of Courts *IO*
Prothonotary of the Superior Court *cert. mail*
FILE – Judge Lewis *IO*

15