J-S89045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| SHAQUILLE M. HENDERSON | |
| Appellant | No. 870 EDA 2015 |

Appeal from the Judgment of Sentence November 7, 2014
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s):
CP-51-CR-0009569-2013
CP-51-CR-0009598-2013

BEFORE: SHOGAN, MOULTON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED APRIL 28, 2017**

Appellant, Shaquille M. Henderson, appeals from his judgment of sentence of life imprisonment for first degree murder.[1] Appellant argues that the evidence was insufficient to sustain his murder conviction, and that the weight of the evidence entitles him to a new trial. We affirm.

The following evidence was adduced during trial. On March 8, 2013, at approximately 2:00 p.m., the victim was shot and killed on the third floor of a boarding house he owned, located at 1311 West Butler Street, Philadelphia.

Denise Rahman lived on the second floor of the victim's boarding house. On March 8, 2013, she was at home waiting for a doctor's

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

appointment when the victim came to collect rent. Rahman paid the victim, who then went upstairs to the third floor. A few minutes later, he came back down and knocked on Rahman's door again. This time, he asked her if she had seen Appellant, the third floor tenant. Appellant was the victim's nephew. Rahman replied that she had not. The victim informed Rahman that he had to leave to take care of something but would return shortly. N.T., 10/27/14, at 130-38.

While the victim was out of the house, Rahman heard Appellant walking up to the third floor. Not long afterward, Appellant knocked on Rahman's door and asked her if anyone had gone through his room. She answered that the only person who had been upstairs was their landlord, the victim. Upset at Rahman's response, Appellant went back upstairs to his room. After some time had passed, the victim returned, and Rahman went downstairs to inform him that Appellant was now home. When she got downstairs, she discovered that Appellant had followed her downstairs. The victim told Appellant that they needed to speak privately in Appellant's room on the third floor. *Id.* at 138-43.

From her room on the second floor, Rahman heard Appellant and the victim arguing. After several minutes, the victim came back downstairs to speak with Rahman. He seemed upset, but Rahman calmed him down, and he returned to the third floor to resume speaking with Appellant. Shortly thereafter, Rahman heard between four and five gunshots from above. She

dove into her closet for cover and heard one person running down the stairs. When she heard the front door open, she looked out of her window and saw Appellant riding away on a bicycle. At no point before the shooting did Rahman see, speak with or hear anyone other than the victim and Appellant. The police arrived, and Rahman informed them that Appellant had shot and killed the victim. *Id.* at 143-52.

Granville Worthington lived on the first floor of the victim's boarding house. On March 8, 2013, he was sleeping in his room when he was awoken by four to five gunshots from above. As he got out of bed, he heard hurried footsteps coming down the stairs, but by the time he exited his room, he did not see anyone leaving. Worthington went upstairs because he heard Rahman calling out to the victim. Worthington found the victim unresponsive on the ground and called 911. *Id.* at 173-84.

The victim was pronounced dead at the scene, and an autopsy revealed that he had been shot nine times. Dr. Sam Gulino, who performed the autopsy, concluded that the victim suffered three independently fatal wounds: one to the left side of the head, one near the base of the neck, and one directly to the heart. The manner of death was homicide. N.T., 10/29/14 at 17-24.

Officer Jacquelin Davis processed the crime scene for evidence and found nine fired cartridge casings in the third floor hallway and an empty lockbox for a Glock pistol in one of the third floor bedrooms. *Id.* at 60-81.

Appellant managed to elude capture until April 25, 2013. On that date, Officer Michael O'Brien and two of his colleagues were at a Starbuck's on the campus of Temple University when they saw Appellant sitting on a bench outside. Knowing that he was wanted, the officers approached him and attempted to make an arrest. N.T., 10/28/14, at 4-8. Appellant fled as soon as he saw the officers. During the chase, he reached behind his back and threw a pistol into a nearby alleyway. Officer O'Brien stopped his pursuit to recover the pistol, and his colleagues apprehended Appellant a few blocks away. A search incident to arrest revealed that Appellant was in possession of several grams of crack cocaine. The pistol was a stolen, police-issue Glock 17. Detective William Sierra concluded that the bullets and shell casings recovered from the crime scene were fired by the Glock 17 pistol found in Appellant's possession. *Id.* at 8-22, 79-80.

The Commonwealth charged Appellant with first degree murder and a violation of the Uniform Firearms Act ("VUFA").[2] On October 27, 2014, he pleaded not guilty and proceeded to a jury trial, in which he testified in his own defense. He admitted that he was present at the scene of the murder but claimed that his friend, Wayne Wiggins, did the shooting. According to Appellant, the victim had stolen their drugs, and Wiggins shot the victim out

---

[2] 18 Pa.C.S. § 6108. Appellant does not challenge this conviction in this appeal.

of anger. He explained his possession of the gun by saying that Wiggins gave it to him following the murder. N.T., 10/29/14, at 47-60.

The jury convicted Appellant of first degree murder and the firearms charge. On November 7, 2014, the court imposed the mandatory sentence of life imprisonment without parole for murder and no further penalty on the firearms conviction. Appellant filed timely post-sentence motions which were denied by operation of law on March 16, 2015. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

> I. Is [Appellant] entitled to an [a]rrest of [j]udgment on the charge of [m]urder in the [f]irst [d]egree where the evidence is insufficient to sustain the verdict and where the evidence did not establish that [Appellant] was a principal, conspirator [or] an accomplice to the incident in question and acted with premeditation, specific intent to kill nor with malice?

> Il. Is [Appellant] entitled to a new trial on the charge of murder in the first degree where the greater weight of the evidence did not support the verdict and where the verdict was based on speculation, conjecture and surmise?

Appellant's Brief at 3.

Appellant first argues that the evidence was insufficient to sustain his conviction for first degree murder due to lack of evidence that he committed the shooting or that the killing was premeditated. *Id.* at 11. We disagree.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial the in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a

reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact [,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted), *appeal denied*, 138 A.3d 4 (Pa. 2016).

To sustain a conviction for first degree murder, the Commonwealth must prove that the defendant "acted with the specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with premeditation or deliberation." *Commonwealth v. Freeman*, 827 A.2d 385, 404 (Pa. 2003) (citations omitted). The specific intent to kill can be inferred from the use of a deadly weapon on a vital part of the body. *See Commonwealth v. Thomas*, 54 A.3d 332, 335-36 (Pa. 2012) (citations omitted). The period of premeditation necessary for first degree murder may be very brief: the defendant can formulate intent to kill in a fraction of a second. *See Commonwealth v. Chambers*, 980 A.2d 35, 47 (Pa. 2009) (citations

omitted). Indeed, premeditation and deliberation exist whenever there is a conscious purpose to bring about death. **Id.**

Construed in the light most favorable to the Commonwealth, the evidence is sufficient to sustain Appellant's conviction for first degree murder. The evidence clearly demonstrates that Appellant shot the victim. Denise Rahman recounted that the victim and Appellant had an argument in Appellant's third floor apartment, which Appellant was renting from the victim. The victim proceeded downstairs to Rahman's second floor apartment, spoke with Rahman and then proceeded back upstairs to resume his argument with Appellant. Rahman then heard multiple gunshots and saw Appellant fleeing the scene on his bicycle. The victim died on the third floor. Six weeks later, police officers subsequently located Appellant, and he ran away as the officers approached and threw a handgun into an alleyway. The officers recovered the gun, and forensic analysis demonstrated that it was the same gun that was used to kill the victim.

The evidence also shows that Appellant committed this murder with specific intent to kill. Appellant concedes in his brief that his use of a deadly weapon on a vital part of the victim's body sufficiently proved a specific intent to kill. Appellant's Brief at 9; **see also Thomas**, 54 A.3d at 335. Although he maintains that he shot the victim due to panic or rage, he did not present any evidence during trial that he killed the victim due to panic, rage. To the contrary, he remained adamant that he was not the person

- 7 -

responsible for the murder, and a third person committed the murder in retaliation for the victim's theft of drugs. In any event, Rahman's testimony belies this defense by showing that Appellant was the only person with the victim at the time of the shooting. Moreover, the shooting took place following the victim's conversation with Appellant **and** a hiatus during which the victim proceeded downstairs to speak with Rahman. The evidence thus demonstrates that Appellant premeditated the shooting and did not act out of rage or panic.

For these reasons, we reject Appellant's challenge to the sufficiency of the evidence.

In his next argument, Appellant claims that the verdict is against the weight of the evidence because nobody saw him shoot the victim. We disagree.

"[A] trial court's denial of a post-sentence motion based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Nypaver*, 69 A.3d 708, 717 (Pa. Super. 2013) (citations and quotation marks omitted). The weight of the evidence is exclusively for the finder of fact, who "is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Diggs*, 949 A.2d 873, 879 (Pa. 2008). The trial judge may award a new trial only if the fact finder's "verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009)

(citations omitted). "[A]ppellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." *Commonwealth v. Ratushny*, 17 A.3d 1269, 1272 (Pa. Super. 2011) (citation omitted).

The fact that no one saw Appellant actually shoot the victim is of no moment due to other circumstantial evidence tying Appellant to the murder. Appellant was the last person with the victim mere moments before the shooting. Immediately after the shooting, Rahman observed Appellant fleeing the scene. When police officers arrested him six weeks later, he attempted unsuccessfully to discard the murder weapon.

In response to the Commonwealth's evidence, Appellant claimed that he was present during the shooting, but that the perpetrator was Wayne Wiggins—whom nobody else saw in the area. Appellant further alleged that Wiggins gave him the murder weapon following the shooting, which is why he was in possession of it some six weeks later. The jury discredited Appellant's account and chose to credit the testimony of the Commonwealth's witnesses, which was well within its rights as the finder of fact. *See Diggs*, 949 A.2d at 879. Accordingly, the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence. *Ratushny*, 17 A.3d at 1272.

Judgment of sentence affirmed.

Judgment Entered.

![signature]

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/28/2017</u>